# EXHIBIT A
# (PART 1)

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) | Trial Court of Massachusetts Superior Court Department County: Norfolk |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| SOPHIE C. CURRIER, on behalf of herself and on behalf of LEA M. GALLIEN-CURRIER | NATIONAL BOARD OF MEDICAL EXAMINERS |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if Known) |
|---|---|
| Christine S. Collins, Esq., Bowditch & Dewey, LLP, 311 Main Street, P.O. Box 15156, Worcester, MA 01615-0156   (508) 926-3441 Board of Bar Overseers number:   BBO# 639293 | Joseph F. Savage, Jr., Esq. Goodwin Procter LLP, Exchange Place, Boston, MA 02109 (617) 570-1204 |

### Original code and track designation

Place an x in one box only:

☑ 1. F01 Original Complaint
☐ 2. F02 Removal to Sup.Ct. C.231,s.104
☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

☐ 4. F04 District Court Appeal c. 231, s. 97 & 104 (after trial) (X)
☐ 5. F05 Reactivated after rescript; relief from judgement/Order (Mass.R.Civ.P. 60) (X)
☐ 6. E10 Summary Process Appeal (X)

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) TRACK | IS THIS A JURY CASE? |
|---|---|---|
| D99 | | (F  )      (X ) YES      (  ) NO |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(Attach additional sheets as necessary)

A.   Documented medical expenses to date:
   1.   Total hospital expenses                           $ _____
   2.   Total Doctor expenses                             $ _____
   3.   Total chiropractic expenses                       $ _____
   4.   Total physical therapy expenses                   $ _____
   5.   Total other expenses (describe)                   $ _____
                                              Subtotal    $ _____
B.   Documented lost wages and compensation to date       $ _____
C.   Documented property damages to date                  $ _____
D.   Reasonably anticipated future medical and hospital expenses   $ _____
E.   Reasonably anticipated lost wages                    $ _____
F.   Other documented items of damages (describe)         $ _____

G.   Brief description of plaintiff's injury, including nature and extent of injury (describe)

                                                          $ _____
                                              TOTAL       $ _____

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Injunctive relief.

                                              TOTAL       $           N/A

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 9/5/07

AOTC-6 mtc005-11/99
a.o.s.c. 1-2000

# CIVIL ACTION COVER SHEET
## INSTRUCTIONS

## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**CONTRACT**

| A01 | Services, labor and materials | (F) |
| A02 | Goods sold and delivered | (F) |
| A03 | Commercial Paper | (F) |
| A08 | Sale or lease of real estate | (F) |
| A12 | Construction Dispute | (A) |
| A99 | Other (Specify) | (F) |

**TORT**

| B03 | Motor Vehicle negligence-personal injury/property damage | (F) |
| B04 | Other negligence-personal injury/property damage | (F) |
| B05 | Products Liability | (A) |
| B06 | Malpractice-medical | (A) |
| B07 | Malpractice-other(Specify) | (A) |
| B08 | Wrongful death,G.L.c.229,s2A | (A) |
| B15 | Defamation (Libel-Slander) | (A) |
| B19 | Asbestos | (A) |
| B20 | Personal Injury-Slip&Fall | (F) |
| B21 | Environmental | (A) |
| B22 | Employment Discrimination | (F) |
| B99 | Other (Specify) | (F) |

**REAL PROPERTY**

| C01 | Land taking (eminent domain) | (F) |
| C02 | Zoning Appeal, G.L. c.40A | (F) |
| C03 | Dispute concerning title | (F) |
| C04 | Foreclosure of mortgage | (X) |
| C05 | Condominium lien and charges | (X) |
| C99 | Other (Specify) | (F) |

**EQUITABLE REMEDIES**

| D01 | Specific performance of contract | (A) |
| D02 | Reach and Apply | (F) |
| D06 | Contribution or Indemnification | (F) |
| D07 | Imposition of Trust | (A) |
| D08 | Minority Stockholder's Suit | (A) |
| D10 | Accounting | (A) |
| D12 | Dissolution of Partnership | (F) |
| D13 | Declaratory Judgment G.L.c.231A | (A) |
| D99 | Other (Specify) | (F) |

**MISCELLANEOUS**

| E02 | Appeal from administrative Agency G.L. c. 30A | (X) |
| E03 | Action against Commonwealth Municipality, G.L. c.258 | (A) |
| E05 | All Arbitration | (X) |
| E07 | c.112,s.12S (Mary Moe) | (X) |
| E08 | Appointment of Receiver | (X) |
| E09 | General contractor bond, G.L. c.149,s.29,29a | (A) |
| E11 | Workman's Compensation | (X) |
| E14 | Chapter 123A Petition-SDP | (X) |
| E15 | Abuse Petition, G.L.c.209A | (X) |
| E16 | Auto Surcharge Appeal | (X) |
| E17 | Civil Rights Act, G.L.c.12,s.11H | (X) |
| E18 | Foreign Discovery proceeding | (X) |
| E96 | Prisoner Cases | (F) |
| E97 | Prisoner Habeas Corpus | (X) |
| E99 | Other (Specify) | (X) |

## TRANSFER YOUR SELECTION TO THE FACE SHEET.

EXAMPLE:

| CODE NO. | TYPE OF ACTION (SPECIFY) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | (F) | ☒ Yes   ☐ No |

### SUPERIOR COURT RULE 29

**DUTY OF THE PLAINTIFF.** The plaintiff or his/her counsel shall set forth, on the face sheet (or attach additional sheets as necessary), a statement specifying in full and itemized detail the facts upon which the plaintiff then relies as constituting money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served on the defendant together with the complaint. If a statement of money damages, where appropriate is not filed, the Clerk-Magistrate shall transfer the action as provided in Rule 29(5)(C).

**DUTY OF THE DEFENDANT.** Should the defendant believe the statement of damages filed by the plaintiff in any respect inadequate, he or his counsel may file with the answer a statement specifying in reasonable detail the potential damages which may result should the plaintiff prevail. Such statement, if any, shall be served with the answer.

### A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT,  BUFF COLOR PAPER.

## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

NORFOLK, SS                                    CIVIL ACTION NO.

_____
                                              )
SOPHIE C. CURRIER on behalf of herself and    )
on behalf of LEA M. GALLIEN-CURRIER,          )
                    Plaintiffs,               )
                                              )
v.                                            )
                                              )
NATIONAL BOARD OF                             )
MEDICAL EXAMINERS,                            )
                                              )
                    Defendant.                )
_____      )

## VERIFIED COMPLAINT IN EQUITY AND
## REQUEST FOR INJUNCTIVE RELIEF

### Introduction

1.    Plaintiffs Sophie C. Currier ("Ms. Currier") and Lea M. Gallien-Currier

("Lea") have filed this action seeking declaratory and injunctive relief to remedy the

discriminatory conduct of Defendant National Board of Medical Examiners ("NBME") in

refusing to provide Ms. Currier with additional time and a suitable environment in which to

express breast milk during the administration of the United States Medical Licensing

Examination ("USMLE") on September 15, 2007.

### Parties

2.    Ms. Currier is a thirty-three (33) year old resident of Brookline, Massachusetts

and the mother of Lea, her four (4) month old infant daughter, who was born on May 1, 2007.

Ms. Currier is a 1997 graduate of the Massachusetts Institute of Technology, and obtained a

Master's degree in toxicology in 1999.  Ms. Currier enrolled in a dual doctoral degree program at

Harvard Medical School in 1999, and obtained her doctorate in neuroscience in 2004.  She

obtained a scholarship to attend medical school through the Medical Scientist Training Program

("MSTP") funded by the National Institutes of Health ("NIH").  She is scheduled to graduate

from Harvard Medical School in November 2007 with her doctorate in medicine, ("M.D."), and

has accepted a residency position at Massachusetts General Hospital ("MGH") in the field of

clinical pathology.  Ms. Currier is scheduled to begin her residency position at MGH upon

graduating from medical school.

     3.     The NBME is a Pennsylvania non-profit corporation with its principal place of

business in Philadelphia, Pennsylvania.  The NBME is a recipient of federal funds and is

responsible for administering the USMLE.  The NBME by its very function is a state actor.

The USMLE Examination

     4.     The USMLE is the examination required for medical licensure in all 50 states.  It

is divided into three "steps" or examinations, each of which must be passed in order to obtain

and maintain a license to practice medicine.  The USMLE is offered at various scheduling and

test centers operated by Prometric, a division of Thomson Learning, Inc., ("Prometric"), a

Delaware corporation.

     5.     Step 2 CK is the second "step" of the USMLE and is comprised of approximately

370 multiple-choice test questions distributed equally into eight (8) 60-minute blocks.  An

examinee cannot review or revise their answers to questions in a block they have completed.

The Step 2 CK is administered by computers in one nine (9) hour testing session.

     6.     Individuals taking the Step 2 CK are provided forty-five (45) minutes of "break"

time over the course of the examination during which they are permitted to leave the

examination room to attend to personal needs, such as eating, drinking, and using the restroom.

{Client Files\EMP\306291\0001\PLD\00971325.DOC;6}

Candidates are required to sign in and out each time they leave the testing room.  Each examinee may allocate and use the forty-five (45) minutes of break time as needed throughout the testing day.

7.      Ms. Currier is scheduled to take Step 2 CK at Prometric's Brookline, Massachusetts location at 1330 Beacon Street (the "test site") on September 15, 2007.  The examination rooms at the test site are video monitored and are enclosed by glass on three (3) of four (4) sides to permit proctors to observe the examinees.  Each examinee is assigned to an individual cubicle containing a computer.  The women's restrooms at the test site are located approximately a one-minute walk from the testing rooms in a hallway that is shared with other businesses and require a key for entry.

8.      Because Ms. Currier was diagnosed with both Attention Deficit Hyperactivity Disorder and Dyslexia when she was sixteen (16) years old, she has consistently received "double time" to take standardized examinations, including the USMLE, as well as a separate room.  In the case of the Step 2 CK, Ms. Currier will have two days, rather than one, in which to take the Step 2 CK and a separate room which, similar to the main testing room, is also video-monitored and enclosed on three sides with glass walls.

<u>Ms. Currier Is Breastfeeding Her Infant Daughter</u>

9.      The American Academy of Pediatrics ("AAP"), the American College of Obstetricians and Gynecologists ("ACOG"), the Academy of Breastfeeding Medicine, and the American Academy of Family Practice ("AAFP") recommend that an infant be exclusively breastfed for the first six (6) months after birth and partially breast-fed for up to at least twelve (12) months of age.  (Affidavit of Alison Stuebe, M.D. ("Stuebe Aff."), ¶ 3, and <u>Exhibits A, B, C</u>, filed herewith; Affidavit of Marsha Walker ("Walker Aff."), ¶ 5, filed herewith.)  It is well-

3

established in the fields of medicine and public health that breastfeeding improves infants' general health, growth, and development, and significantly decreases the risk of numerous acute and chronic diseases.  (Stuebe Aff., ¶ 4, <u>Exhibits A, D</u>; Walker Aff., ¶ 6.)  Breastfeeding also provides long and short-term benefits to mothers who nurse, including accelerated pregnancy-related weight loss and decreased risks of breast and ovarian cancer and osteoporosis.  (Stuebe Aff., ¶ 4; Walker Aff., ¶ 6.)  The public health benefits of breastfeeding include decreased health care costs due to reductions in infant morbidity.  (<u>Id.</u>)  One barrier to breastfeeding includes maternal employment, especially in the absence of workplace facilities and support for breastfeeding.  (Stuebe Aff., ¶ 12; Walker Aff., ¶ 17.)

10.     In accordance with these medical recommendations, Ms. Currier has breast-fed her infant daughter exclusively since birth and intends to continue doing so at least until she reaches six (6) months of age.

11.     On September 15, 2007, Lea will be approximately 4 ½ months old and Ms. Currier will be breastfeeding her approximately every two to three hours.  A nursing mother of a four month old infant should express breast milk a minimum of every three (3) hours in order to maintain milk production and avoid engorgement, blockage of milk ducts, galactoceles (milk retention cysts), mastitis (an infection of the breast leading caused by the blocking of the milk ducts), and breast abscesses.  (Stuebe Aff., ¶ 5; Walker Aff., ¶ 7.)  Incomplete expression of milk may also lead to blocked milk ducts, galactoceals, and mastitis.  (Stuebe Aff., ¶ 5; Walker Aff., ¶ 7.)

12.     When Ms. Currier is unable to breast-feed her daughter, she expresses breast milk through the use of an electric breast milk pump, commonly called a "breast pump."  Electric breast pumps are among the most efficient means by which to express breast milk when not

nursing directly, but require the use of a wall outlet or battery pack for operation. (Walker Aff., ¶ 8.) In order to properly express breast milk using a hospital grade breast pump, a nursing mother will require approximately five (5) minutes to assemble the breast pump, ten (10) to fifteen (15) minutes to express milk, five (5) minutes to disassemble and clean the breast pump and to dispense and/or store the expressed milk. (Stuebe Aff., ¶ 6; Walker Aff., ¶ 9.) In total, a nursing mother will require a total of twenty-five to thirty minutes per pumping session in order to properly express breast milk using an electric-grade pump. (Id.)

13.    Use of a breast pump requires a private location because all such pumps require a woman to expose her breasts in order to assemble and to properly position the equipment during the pumping process. (Stuebe Aff., ¶ 7; Walker Aff., ¶ 10.) It is recommended that a nursing mother consume an additional 500 calories and 0.7 liters (23 ounces) of liquids per day to maintain an adequate milk supply and thus, nursing mothers require regular trips to the restroom. (Stuebe Aff., ¶ 8; Walker Aff., ¶ 11.) Although it is possible to eat and/or drink while expressing milk using a breast pump, it is not recommended because it requires the mother to have access to a suitable private space and to configure a chair, table, and breast pump so that she can balance the pump flanges while eating. (Stuebe Aff., ¶ 9; Walker Aff., ¶ 13.) It is not recommended that a woman use a breast pump to express breast milk while using a restroom due to the risk of infection. (Stuebe Aff., ¶ 10; Walker Aff., ¶ 14.) To maintain proper hygiene, a nursing mother's hands and the breast pump parts must be cleaned in a sink with potable running water after the pumping process. (Stuebe Aff., ¶ 10; Walker Aff., ¶ 15.) Forty-five minutes is insufficient time for a nursing mother of a four month old infant to eat, drink, use the restroom and to fully and properly express breast milk using an electric pump two times over the course of nine hours. (Stuebe Aff., ¶ 11; Walker Aff., ¶ 16.)

<u>Ms. Currier Requests Additional Break Time From the NBME
To Express Breast Milk During The Examination Day.</u>

14.     On or about June 19, 2007, Ms. Currier sent correspondence to the NBME requesting that she be provided an accommodation of additional break time in order to express breast milk during the examination.  (See correspondence from Ms. Currier to NBME dated June 19, 2007, attached hereto as <u>Exhibit 1</u>.)  The NBME responded three weeks later, on July 11, 2007, rejecting Ms. Currier's request.  (See correspondence from Catherine Farmer to Ms. Currier, dated July 11, 2007, attached hereto as <u>Exhibit 2</u>.)

15.     On August 10, 2007, Ms. Currier, through counsel, again requested that the NBME provide her with additional break time and a private room in which to express milk.  (<u>See</u> correspondence from Christine S. Collins Esq. to NBME dated August 10, 2007, hereto as <u>Exhibit 3</u>.)  The NBME, through counsel, responded on August 17, 2007, again rejecting Ms. Currier's request, and demanding additional information from Ms. Currier.  (<u>See</u> correspondence from Attorney Joseph F. Savage, Jr. to Christine S. Collins, dated August 16, 2007, attached hereto as <u>Exhibit 4</u>.)  On August 24, 2007, Ms. Currier responded to the NBME supplying additional information, through counsel's correspondence (attached hereto as <u>Exhibit 5</u>.)  The NBME responded on August 28, 2007, through counsel, offering some accommodations for Ms. Currier except sufficient time to pump. (<u>See</u> correspondence from Attorney Savage to Attorney Collins, dated August 28, 2007 attached hereto as <u>Exhibit 6</u>.)

16.   Ms. Currier is required to pass Step 2 CK in order to graduate with her M.D. from Harvard Medical School, to obtain her medical license in Massachusetts, and to begin her clinical pathology residency at Massachusetts General Hospital.  If Ms. Currier does not pass Step 2 CK in September 2007, she faces the loss of her residency position at Massachusetts General Hospital, and, as a result, her career as a physician and researcher, for which she has

spent eight (8) years training, will be delayed indefinitely. (Stuebe Aff., ¶ 13.) A delay of even one year in matriculating to her residency position will injure her professional reputation, ability to earn a living and to begin fulfilling her medical school scholarship obligations, and may lead to the loss of her clinical knowledge and skills. (Stuebe Aff., ¶ 13.) The public interest will not be harmed if Ms. Currier is provided with sufficient time to express milk during the Step 2 CK; in fact, the public interest will be harmed if she is not provided with sufficient time to express breast milk during the examination because her advancement as a physician and researcher, funded by the NIH through scholarship monies, will be stunted; potential patients will be denied her services for a period of at least one year; and because women, such as Ms. Currier, will be discouraged from continuing to breastfeed their children after returning to work. (Stuebe Aff., ¶¶ 12, 14; Walker Aff., ¶ 17.)

## CAUSES OF ACTION
### COUNT I
#### (42 U.S.C. § 1983 - Constitutional Right to Privacy)

17.     Ms. Currier re-alleges and restates paragraphs 1 through 16 as if fully set forth herein.

18.     The NBME has, while acting under color of law, knowingly, intentionally, and egregiously abridged Ms. Currier's settled right to privacy guaranteed under the United States Constitution by refusing to provide her with sufficient time and a suitable environment in which to express breast milk during the USMLE.

19.     Due to the NBME's violation of Ms. Currier's rights, she has suffered and will continue to suffer irreparable harm.

## COUNT II

**(Right to Privacy - Violation of Massachusetts Declaration of Rights, Articles 1, 106)**

20.    Ms. Currier re-alleges and restates paragraphs 1 through 19 as if fully set forth herein.

21.    The NBME has, while acting under color of law, knowingly, intentionally, and egregiously abridged Ms. Currier's settled right to privacy guaranteed under Articles 1 and 106 of the Massachusetts Declaration of Rights by refusing to provide her with sufficient time and a suitable environment in which to express breast milk during the USMLE.

22.    Due to the NBME's violation of Ms. Currier's rights, she has suffered and will continue to suffer irreparable harm.

## COUNT III

**Massachusetts Civil Rights Act, M.G.L. c. 12, §§ 11H-11I**

23.    Ms. Currier re-alleges and restates paragraphs 1 through 22 as if fully set forth herein.

24.    The NBME has interfered with Ms. Currier's exercise of statutory and constitutional rights by threats, intimidation or coercion in violation of the Massachusetts Civil Rights Act by refusing to provide her with sufficient time and a suitable environment in which to express breast milk during the USMLE.  Because Ms. Currier must pass the Step 2 CK examination in order to pursue her chosen profession as a physician, the NBME has accomplished its interference with Ms. Currier's rights through economic coercion.

25.    Due to the NBME's violation of Ms. Currier's rights, she has suffered and will continue to suffer irreparable harm.

## COUNT IV
### (M.G.L. c. 93, §102 - Massachusetts Equal Rights Act)

26.     Ms. Currier re-alleges and restates paragraphs 1 through 25 as if fully set forth herein.

27.     In refusing to provide Ms. Currier with sufficient time and a suitable environment in which to express breast milk during the USMLE, the NBME, has unlawfully subjected her to discriminatory treatment on the basis of sex in violation the Massachusetts Equal Rights Act.

28.     Due to the NBME's unjust and discriminatory treatment of Ms. Currier, she has suffered and will continue to suffer irreparable harm.

## COUNT V
### (M.G.L. c. 272 §§ 92A, 98 - Massachusetts Public Accommodation Law)

29.     Ms. Currier re-alleges and restates paragraphs 1 through 28 as if fully set forth herein.

30.     The NBME, by and through Prometric, offers and administers the USMLE to M.D. candidates at scheduling and testing centers located throughout the United States, as such it is a public accommodation.

31.     In order to graduate from medical school, obtain a license, enter her residency position at Massachusetts General Hospital, and practice medicine, Ms. Currier must pass the Step 2 CK which is offered and administered by the NBME, by and through Prometric.

32.     In refusing to provide Ms. Currier with sufficient time and a suitable environment in which to express breast milk during the USMLE at Prometric's Brookline

location, the NBME has intentionally and unlawfully subjected Ms. Currier to discrimination on the basis of sex in violation of the Massachusetts Public Accommodation Law.

33.     Due to the NBME's unjust and discriminatory treatment of Ms. Currier, she has suffered and will continue to suffer irreparable harm.

### COUNT VI
### (G.L.c., 231A, § 1 Declaratory Judgment)

34.     Ms. Currier re-alleges and restates paragraphs 1 through 33 as if fully set forth herein.

35.     An actual controversy divides the parties in this case.

36.     Ms. Currier has no adequate remedy at law.

37.     As a direct result of the NBME's willful and knowing violation of her rights, Ms. Currier seeks a declaration of the parties' rights and obligations and a declaration that the NBME must provide her with additional time to express breast milk during Step 2 CK of the USMLE.

**WHEREFORE**, Plaintiff Sophie C. Currier respectfully requests that this Court grant the following relief:

1.     Declare that the NBME has, by engaging in the conduct as described above, violated Ms. Currier's right to privacy under the United States Constitution and Articles 1 and 106 of the Massachusetts Declaration of Rights; M.G.L. c. 12, § 11I; M.G.L. c. 93, §102; and M.G.L. c.272, §92A;

2.     issue a temporary restraining order and then a preliminary injunction requiring the NBME to allot Ms. Currier an additional sixty (60) minutes of break time per test day and to

10

ensure that she is provided with a private room with a power outlet at the testing center in order

to express breast milk in privacy;

   3. award reasonable attorney's fees and costs pursuant to 42 U.S.C. §1988; M.G.L.

c. 12, §11I; and M.G.L. c. 93, §102;

   4. grant such other and further relief as this Court deems appropriate.


   PLAINTIFFS REQUEST A JURY TRIAL ON ALL CLAIMS SO TRIABLE.

        SOPHIE C. CURRIER and
        LEA M. GALLIEN-CURRIER
        By their attorneys,


        Christine S. Collins BBO #639293
        Melissa J. Conroy BBO #646932
        BOWDITCH & DEWEY, LLP
        311 Main Street
        PO Box 15156
        Worcester, MA  01615-0156
Dated:  September 05, 2007   (508) 791-3511

## VERIFICATION

  I, Sophie C. Currier, having read the foregoing Verified Complaint, make oath that the facts recited therein are true and correct, except as to matters therein stated to be on information and belief, and as to these matters, I believe them to be true.

  Signed under the pains and penalties of perjury this 05 day of September, 2007.


_____
   Sophie C. Currier

<u>CERTIFICATE OF SERVICE</u>

I, Christine S. Collins, hereby certify that I have served a copy of the foregoing on the following by electronic mail and mailing same, postage prepaid, this 5th day of September, 2007 to:

> Joseph F. Savage, Jr.
> Goodwin Procter LLP
> Exchange Place
> Boston, MA 02109

Christine S. Collins

{Client Files\EMP\306291\0601\PLD\00971325.DOC;6}

# EXHIBIT 1

*Sent Wed June 20 2007*

USMLE Secretariat
3750 Market St.
Phil PA 19104


Tuesday, June 19, 2007

Dear USMLE coordinators,

I am writing to officially request additional break time for the USMLE step 2 clinical Knowledge exam in order to express milk.  My child will be about 3 months old when I plan take the exam and will be still feeding every 2-3 hours during the day. Thus in order to prevent blocked ducts and the risk of mastitis I will absolutely need to express my milk likewise every 3 hours. Expressing milk takes 20 to 30 minutes (including set up and clean up time). Thus the 40 minutes of break total for the 9 hours of exam is absolutely not sufficient for expressing milk. Thus I will need an additional 20 minutes of break time in order to accommodate this medical need. This is especially true since due to other disabilities I will be taking the exam over 2 day period (9 hours each day). Denial of this right to be given time to express my milk (a medical necessity) would be constitute discrimination as it would prevent me as a lactating mother from being able to take this required exam. I, and all other lactating women required to take this exam, depend on your cooperation.

Yours sincerely,

Sophie C Currier
106 Brook St. apt 2
Brookline MA 02445

# EXHIBIT 2



National Board of Medical Examiners®
3750 Market Street
Philadelphia, PA 19104-3102
215.590.9500

## -Confidential-

### Confirmation of Test Accommodations

Via Certified Mail

July 11, 2007

Sophie C. Currier
106 Brook St Apt 2
Brookline, MA 02445

RE: USMLE Step 2 CK                         USMLE ID#: 5-083-227-8

Dear Ms. Currier:

I am responding to your request for subsequent accommodations dated June 25, 2007 and your inquiry to the USMLE Secretariat dated June 19, 2007, which was forwarded to me for reply. Consistent with the Americans with Disabilities Act (ADA), USMLE policies and procedures provide for reasonable and appropriate testing accommodations to be made available to individuals with disabilities, as that term is defined in the law.

**We will provide the following testing accommodation(s) during the administration of the United States Medical Licensing Examination (USMLE) Step 2 Clinical Knowledge (CK) for which you are currently registered:**

•      Extended testing time - double time:  The exam will be administered over two days.  Day one will consist of up to 8 hours of testing time (eight 60-minute blocks with a maximum of 23 questions per block), up to 15 minutes of tutorial, and at least 45 minutes of break time.  Day two consists of up to 8 hours of testing time (eight 60-minute blocks with a maximum of 23 questions per block) and at least 45 minutes of break time.  You may use break time as needed between blocks.  If you complete the tutorial or an examination block in less time than allotted, the unused time will be added to your available break time.

•      Separate Room

> You will receive an electronic permit which will contain all of the information that you need to schedule your examination.  In order to facilitate scheduling your exam, please call Prometric at the number listed on your scheduling permit as soon as you receive it.

You may not change these accommodations at the test center on your scheduled exam day.  If you choose not to use these accommodations, please notify USMLE Disability Services immediately for instructions on re-registering for your exam.  To contact USMLE Disability Services, call 215-590-9700.

-OVER-

Individuals with temporary physical conditions do not fall within the coverage of the ADA. However, the use of personal items or "comfort measures" relating to the physical testing environment may be provided to individuals with temporary physical conditions. Comfort measures do not include modifications in the standard conditions of test administration, such as testing time or break time. Consequently, we are unable to grant your request for additional break time during Step 2 CK in order to express milk.

**We will provide the following Personal Item Exception (PIE) during the administration of the USMLE Step 2 Clinical Knowledge (CK). Personal items are subject to inspection by test center staff:**

- Permission to bring and use your breast pump in the separate testing room.
(You may choose to store/access your breast pump outside of the secure testing area.)

In your June 19, 2007 request, you state that you will need to express milk every 3 hours and that the process takes 20 to 30 minutes. The following sample exam schedule demonstrates how an examinee may flexibly manage the tutorial and standard break time allotment to break every three hours for 20-30 minutes.

| Day 1* | | Day 2 | |
|---|---|---|---|
| 9:00am -12:00pm | Examination (3 blocks) | 9:00am -12:00pm | Examination (3 blocks) |
| 12:00pm -12:30pm | 30 minute break | 12:00pm -12:25pm | 25 minute break |
| 12:30pm - 3:30pm | Examination (3 blocks) | 12:25pm - 3:25pm | Examination (3 blocks) |
| 3:30pm - 4:00pm | 30 minute break | 3:25pm - 3:45pm | 20 minute break |
| 4:00pm - 6:00pm | Examination (2 blocks) | 3:45pm - 5:45pm | Examination (2 blocks) |

*As noted in the Bulletin of Information, examinees who finish the tutorial early may use the remaining time as break time.

**Important Information About Requesting Test Accommodations in the Future**

**If you are requesting the same accommodation(s) previously approved for STEP 1 or STEP 2 CK**, print and complete the **Form for Requesting Subsequent Test Accommodations** found on the NBME website at www.nbme.org. Mail the form to the address indicated on the website at the same time you register for the exam.

**If you are requesting a change in accommodations for STEP 1 or STEP 2 CK**, follow the instructions for a new request on the NBME website at www.nbme.org.

**If you are requesting test accommodations for STEP 3**, please note that STEP 3 is administered by the individual medical licensing authorities of the United States and its territories. Contact the Federation of State Medical Boards at (817) 868-4000 or www.fsmb.org for further information.

Sincerely,

Catherine Farmer, Psy.D.
Manager, Disability Services
ADA Compliance Officer, Testing Programs

AY

# EXHIBIT 3



*Bowditch*
*&Dewey*
ATTORNEYS

Direct telephone: (508) 926-3441
Direct facsimile: (508) 929-3041
Email: ccollins@bowditch.com

August 10, 2007

VIA OVERNIGHT MAIL

Susan Deitch
Office of the USMLE Secretariat
United States Medical Licensing Examination
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104-3102

    Re:    *Sophie C. Currier/USMLE ID#: 5-083-227-8*

Dear Ms. Dietch:

    This firm represents Sophie C. Currier in connection with her application to take Step 2 Clinical Knowledge ("Step 2 CK") of the United States Medical Licensing Examination on September 15, 2007 at the Thomson Prometric's Test Center located at 1330 Beacon Street, Brookline, Massachusetts (the "testing center"), and, specifically, her request to the Secretariat of the United States Medical Licensing Examination for the National Board of Medical Examiners ("you" or "USMLE") for additional break time during Step 2 CK in order to express breast milk as outlined in Ms. Currier's June 19, 2007 correspondence to the USMLE and its subsequent denial of her request by way of correspondence dated July 3, 2007, July 5, 2007 and July 11, 2007.

    This letter constitutes a formal demand that, for the reasons outlined herein, the USMLE provide Ms. Currier with an additional sixty (60) minutes of break time to express milk and to ensure that a private room with a power outlet at the testing center is made available for her to do so during her Step 2 CK examination on September 15, 2007.

    By way of background, Ms. Currier is scheduled to graduate from Harvard Medical School in November 2007 with dual doctorate degrees in medicine and neuroscience. She has been awarded a residency position at Massachusetts General Hospital in the field of clinical pathology and is scheduled to begin this position on October 28, 2007. On May 1, 2007, Ms. Currier gave birth to an infant daughter whom she has breast-fed exclusively since birth. In adherence to the recommendations of the American Academies of Pediatrics, Family Practice, and Obstetricians and Gynecologists, as well as the Massachusetts Medical Society, that infants be breast-fed exclusively for the first six (6) months of life in order to enhance the child's nutritional, immunologic, developmental, psychological, and physical health, Ms. Currier has, to

𝔅

Susan Deitch
Office of the USMLE Secretariat
United States Medical Licensing Examination
August 10, 2007

date, exclusively breast-fed her daughter and she intends to continue doing so exclusively at least until she reaches six (6) months of age. On the date Ms. Currier is scheduled to take Step 2 CK, her infant daughter will be approximately 4 ½ months old, and Ms. Currier anticipates she will be breast-feeding her daughter approximately every two to three hours. Based on this feeding schedule, Ms. Currier is required to express breast milk at least every three hours in order to avoid medical complications such as engorgement, blocked ducts, and mastitis.

The USMLE's refusal to provide Ms. Currier with sufficient break time during Step 2 CK in order to express breast milk to feed her infant daughter violates several federal and state laws, including Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., and the Massachusetts Equal Rights Amendment, both of which prohibit discrimination on the basis of sex. In addition, in refusing to provide Ms. Currier with additional time to express breast milk, the USMLE is abridging her federal and state constitutional rights which are enforceable pursuant to 42 U.S.C. § 1983 and the Massachusetts Civil Rights Act, M.G.L. c. 12, § 11I, by unlawfully interfering with her decision to breast-feed her daughter, and, moreover, is engaging in unlawful discrimination pursuant to the Massachusetts Public Accommodation Law, M.G.L. c. 272, § 92A. For these reasons, Ms. Currier demands that the USMLE take the following steps in order to permit her to express breast milk during her Step 2 CK examination on September 15, 2007: (1) allot her a total of sixty (60) additional minutes of break time; and (2) ensure that she is provided with a private room with a power outlet at the testing center in order to express breast milk in privacy.

Ms. Currier wishes to resolve this matter quickly and amicably. However, if we have not received the USMLE's response to this demand by the close of business on August 17, 2007, Ms. Currier will have no alternative but to consider taking appropriate legal action, including a request for injunctive relief. In such event, she will also seek to recover any and all costs associated with taking that action.

We hope that such action will not be necessary. Thank you for your anticipated cooperation.

Very truly yours,

Christine S. Collins

CSC/
cc:     Sophie C. Currier

# EXHIBIT 4

# GOODWIN | PROCTER

Joseph F. Savage Jr.
617.570.1204
JSavage@goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

August 16, 2007

Christine Collins
Bowditch & Dewey, LLP
311 Main Street
P.O. Box 15156
Worcester, MA 01615-0156

Dear Christine:

Your letter to Ms. Susan Deitch, Office of the Secretariat, dated August 10, 2007, was referred to me by my client, the National Board of Medical Examiners ("NBME"), for reply.

The NBME is an independent, not-for-profit organization whose mission is to protect the health of the public by providing high-quality examinations for the health professions. One such examination, the United States Medical Examination™, co-sponsored and co-owned by the NBME and the Federation of State Medical Boards, assesses a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills that are important in health and disease and that constitute the basis of safe and effective patient care. Results of the USMLE are reported to medical licensing authorities in the United States and its territories for their use in granting the initial license to practice medicine. Given the high stakes, those of public safety, the fairness and validity of the examination are extremely important; these depend, in part, on standardization of the timing of the tests, subject to the requirements of the Americans with Disabilities Act of 1990 (ADA).

The governance of the USMLE program has established rules for the administration of each of the three Steps of USMLE that include standard test administration conditions consistent with the principles upon which the examinations are developed and scored, including a standard amount of testing time and break time.

As your client knows, the NBME provides accommodations, such as additional testing or break time, to examinees with documented disabilities as defined under the Americans with Disabilities Act of 1990. Accommodations respond to the identified functional limitation so that the area of impairment is alleviated by an auxiliary aid or adjustment to the testing procedure. Thus, persons with documented disabilities have access to take the exam on an equal footing with those who do not have a disability. Lactation, breast feeding, and breast pumping are not disabilities as defined by the ADA, as your client has acknowledged.

LIBA/1825002.1

GOODWIN | PROCTER

Christine Collins
August 16, 2007
Page 2

All examinees who take USMLE Step 2 Clinical Knowledge are provided with a standard amount of break time (45 minutes) to attend to their personal needs during the course of their examination day.  If they complete the tutorial or other blocks of the test early, the remaining time is available to them as additional break time.

Examinees, such as Ms. Currier, are permitted to use their break time for the purpose of using a breast pump outside of the testing room.  As Catherine Farmer, Manager, Disability Services, explained in detail to Ms. Currier in her July 11, 2007 letter, an examinee can utilize a breast pump every three hours within the standard time allotted for breaks.  Your letter does not explain why this schedule, which we understand that other nursing mothers have followed, does not meet your client's needs.

Your letter also does not explain why your client is entitled to more time than other nursing mothers have received.  As your client knows, NBME has carefully considered her many requests for additional testing time and other alterations to the standard rules of test administration.  Her requests for double testing time and a separate testing room were granted in accordance with the ADA.  While her request in January 2007 for extra break time on account of her pregnancy was denied, she was granted special permission to bring a snack and a pillow to the examination room as comfort measures.  With regard to her current request, the NBME has already granted Ms. Currier permission to use her breast pump in the separate testing room.

You state that Ms. Currier is currently registered to take Step 2 CK on September 15, 2007 at the Prometric Center in Brookline, MA.  We have confirmed that this center has a private room with a power outlet and is available to examinees who wish to utilize a breast pump during their allotted break time.

As your client knows, the test is given 5-6 days per week and year round.  Therefore, individuals with temporary physical conditions can schedule their testing at a time most convenient to their professional and personal commitments and schedules.

While the NBME is not unsympathetic to examinees with special circumstances that do not fit well with a full-day, timed test, we disagree with your interpretation of NBME's obligations under federal and state law, and your assertion that the decision to deny Ms. Currier's request for additional break time constitutes discrimination on the basis of sex, or discrimination of any kind.  In that regard, in addition to letting us know what is inadequate about the schedule outlined to your client in July, I would appreciate your sending me any court decisions that support your suggestion that Ms. Currier's rights have been violated.  No court I am aware of has

AUG-16-2007  18:05        GOODWIN PROCTER LLP                617 523 1231    P.04

# GOODWIN | PROCTER

Christine Collins
August 16, 2007
Page 3

ever construed any of the statutes you cite to entitle your client to more break time than her
fellow exam takers.  If I have missed something please let me know.

Very truly yours,

Joseph F. Savage Jr.

JFS/mzv

LIBA/1823002.1

TOTAL P.04

# EXHIBIT 5



*Bowditch*
*&Dewey*
ATTORNEYS

Direct telephone:  (508) 926-3441
Direct facsimile:  (508) 929-3041
Email:  ccollins@bowditch.com

August 24, 2007

*VIA FACSIMILE #617-523-1231*
*and FIRST CLASS MAIL*

Joseph F. Savage, Jr., Esq.
Goodwin Procter LLP
Exchange Place
Boston MA  02109

> *Re:*    *Sophie C. Currier/USMLE ID#:  5-083-227-8*

Dear Attorney Savage:

I am in receipt of your correspondence dated August 17, 2007 concerning the above-referenced matter and write on behalf of my client, Sophie C. Currier ("Ms. Currier"), to provide you with the information you requested in hopes that we may resolve Ms. Currier's dispute with the National Board of Medical Examiners ("NBME") in a short time and without resorting to litigation.

First, I will address your inquiry as to why Ms. Currier needs additional time for the Step 2 Clinical Knowledge ("Step 2 CK") portion of the United States Medical Licensing Examination ("USMLE"). As you state in your letter, Ms. Currier, together with all of the candidates for Step 2 CK, is provided with a total of forty-five (45) minutes of "break time" throughout the course of each day of the examination. The NBME allocates this time equally to all test-takers – male and female – in order to attend to their personal needs, including eating, drinking, and using the restroom. As a nursing mother, Ms. Currier needs additional time in order to express breast milk because 45 minutes is simply insufficient for her to attend to those personal needs listed above *and* to express breast milk twice each day over the course of the two days she will be taking the examination. Specifically, using a hospital-grade electric breast pump, each pumping session requires approximately twenty-five (25) to thirty (30) minutes for pump assembly, pumping time, pump disassembly, and pump cleaning. Further, because of her infant daughter's eating schedule, Ms. Currier must express milk two (2) times during each eight (8) hour examination day, which means that Ms. Currier requires a *total* of fifty (50) to sixty (60) minutes of additional time each day of the examination in order to express breast milk. This is particularly so because, as you state, the "private room" which the NBME claims is available to

Joseph F. Savage, Jr., Esq.
August 24, 2007
Page 2

Ms. Currier in order for her to pump[1] (which I understand from my client is, in fact, a storage room without a sink) is a separate room and does not have a sink, thus requiring additional travel time to and from the "private" room, the restroom, and the testing room, as well as additional time in the restroom for cleaning purposes because the "private" room has no sink for Ms. Currier to use.[2]

Furthermore, Ms. Currier's situation is particularly complicated by the fact that, as you note, she has received an accommodation for her disabilities, Attention Deficit Hyperactivity Disorder ("ADHD") and dyslexia. This accommodation consists of "double time," or one extra day in this case, to take the examination. Thus, your suggestion that Ms. Currier could simply "earn" extra break time during which she could pump by foregoing the fifteen minutes tutorial period at the beginning of the examination (which, it is notable, Ms. Currier would not have on the second testing day) and/or completing test blocks early (as other nursing mothers may have done) ignores the fact that she is disabled and the accommodation she has accordingly been provided. Thus, if Ms. Currier is not allowed additional time to pump breast milk in addition to the existing break time, then she may be required to sacrifice testing time needed to accommodate her ADHD and dyslexia in order to pump milk. I will address the legal implications of these facts below.

In sum, unless the NBME agrees to provide Ms. Currier with additional time to pump breast milk as she has reasonably requested, Ms. Currier is faced with the truly Hobbesian choice of, on the one hand, expressing breast milk twice over the course of each testing day in forty-five (45) minutes or less and not eating, drinking, and using the restroom or, on the other hand, not pumping while she is taking the examination, thereby risking a variety of medical complications such as engorgement, plugged ducts, mastitis, and breast abscesses, not to mention decreased milk production which would negatively affect her infant daughter who relies on Ms. Currier as her sole source of nourishment. It is similarly unreasonable – if not humiliating – to require Ms. Currier to eat, drink, and use the restroom, while she is pumping. The fact that "other nursing women" may have employed this tactic (or other tactics, such as expressing breast milk in their cars in a parking lot during their break time or pumping in lieu of undergoing the fifteen minute tutorial at the beginning of the examination) in the past in order to accomplish their personal goal of nursing their child and their professional goal of taking the Step 2 CK does not make it acceptable by any measure. In that regard, I ask that you provide me with the names of those women about whom the NBME is aware who have successfully taken Step 2 CK or any other Step of the USMLE while nursing and/or who have requested accommodations of any kind due to their status as nursing mothers.

Next, I turn to your request for case law supporting our position that the NBME must

---

[1]   I note that the NBME's crass grant of permission to Ms. Currier to pump in her separate testing room is grossly inappropriate given the fact that that room is enclosed on three sides by glass walls, thus requiring Ms. Currier to expose herself to passersby in sight of her engaged in pumping milk from her breasts.
[2]   I also note that breast milk is considered a biohazardous substance because it can transmit viruses (such as human immunodeficiency virus) and thus it is critically important that a sink be made available for Ms. Currier to clean up after pumping.

Joseph F. Savage, Jr., Esq.
August 24, 2007
Page 3

provide Ms. Currier with additional time and an appropriate private location in order to express
breast milk during the exam. To start, breastfeeding has been recognized by at least one federal
court to be a right protected by the United States Constitution. See Dike v. School Bd. of Orange
County, 650 F.2d 783 (5th Cir. 1981); see also Berrios-Berrios v. Thornburg, 716 F. Supp. 987
(1989). I have enclosed a copy of the Dike case for your review, and point out in particular that
portion of the case where the Fifth Circuit Court of Appeals states that "[b]reastfeeding is the
most elemental form of parental care," and that "[i]n light of the spectrum of interests that the
Supreme Court has held specially protected we conclude that the Constitution protects from
excessive state interference a woman's decision respecting breastfeeding her child." 650 F.2d at
787. Also enclosed is an unpublished Order from the Supreme Court of the State of Montana
entitled In Re The Request For Accommodation Of Cassandra Coleman For The July 2005
Montana Bar Examination, No. 05-304, dated June 22, 2005, in which that Court found similarly
and required the Montana Board of Bar Examiners to provide Ms. Coleman with a separate room
for the entire examination process.[3] I believe that Massachusetts courts would rule likewise and
hold that the NBME's refusal to provide Ms. Currier with any additional time in order to express
milk during the course of the Step 2 CK constitutes a violation of her rights which are protected
by the United States Constitution, the Massachusetts Constitution, and the Massachusetts Civil
Rights Act.

    In addition, the NBME's refusal to provide additional time to Ms. Currier in order for her
to express milk is, by its very nature, discrimination on the basis of sex and parental status. As
you are aware, Title IX of the Education Amendments of 1972, the Massachusetts Equal Rights
Act, and Massachusetts' Public Accommodation Law all prohibit discrimination on the basis of
sex. Federal regulations interpreting Title IX go further to make unlawful discrimination on the
basis of parental status. See 34 C.F.R. § 106.40. Because Ms. Currier is a woman and parent
who is nursing her infant daughter, the prohibitions against discriminatory conduct and case law
interpreting and applying Title IX and the Massachusetts Public Accommodation Law apply
here. Your comment that "individuals can schedule their testing at a time most convenient to
their professional and personal commitments" reinforces the discriminatory nature of the
NBME's conduct in Ms. Currier's case. In essence, you suggest that Ms. Currier – as a nursing
woman – can simply elect to delay her professional career until she has completed nursing her
daughter because she has chosen to exercise a constitutionally-protected right and to follow
medical advice by breastfeeding her infant daughter. Put simply, this is a choice that no male
candidate for the Step 2 CK would ever have to face during the course of his medical career
because he cannot give birth, produce breast milk, and nurse a child. Moreover, the
ramifications of making this decision, i.e., losing (1) the opportunity to transition smoothly into
the next stage of her medical career, (2) the opportunity to obtain her medical license for a period
of one year, (3) her prestigious residency position in clinical pathology at Massachusetts General
Hospital, and (4) practical skills and knowledge which she has spent over four (4) years
developing, as well as the long-term effects of having a year-long gap in her professional

---

[3]     It is noteworthy that Ms. Coleman requested, in the alternative, additional time to express milk during the
course of the bar examination and that the Supreme Court of Montana found that such additional time was
unnecessary because of its finding that the Board of Bar Examiners must provide her with a private room in which
she could breast feed her child "in privacy and on her own schedule." See Order, at p. 1.

Joseph F. Savage, Jr., Esq.
August 24, 2007
Page 4

training, are effects which Ms. Currier's male colleagues do not have to face.

The NBME's position in this case becomes all the more absurd in light of the fact that this board not only regulates the USMLE, the sole licensing examination for physicians, but is comprised of physicians. In contrast, numerous physicians and physician organizations, namely the American Academies of Obstetricians and Gynecologists, Pediatricians, and Family Physicians, among others, support and, indeed, strongly recommend breastfeeding because of the medical benefits for infants and the public health benefits as well. In that vein, your letter does not indicate what concerns the NBME has in permitting Ms. Currier to continue breastfeeding her daughter while she aspires to be a physician by allowing her additional time to express milk during the Step 2 CK. Indeed, the public interest weighs heavily in favor of promoting both (1) breastfeeding, see Berrios-Berrios v. Thornburg, 716 F.Supp. 987, 991 (E.D. Ky. 1989) ("it will be a very sad day in America when allowing a mother to breast-feed her infant disserves the public interest"), and (2) the advancement of women such as Ms. Currier in the medical profession; and both of these interests undeniably outweigh any concern the NBME may have in providing a physician-to-be with additional time to express breast milk for her infant daughter.

Finally, and no less important, Sophie Currier is not simply an examination candidate who is a nursing mother wishing to express breast milk. She is such a nursing mother _with a disability_, namely, ADHD. As a public accommodation under both federal and state law (as well as a recipient of federal financial assistance under federal law), the NBME is legally obligated to provide reasonable accommodation to persons in Ms. Currier's position. The fact that she has been given extended time in the form of an additional examination day does not mean that the board is not required to provide additional accommodations in order for her to take and succeed on the examination on the same basis as other individuals, including other nursing mothers, without disabilities. The effect of the NBME's position is to deny Ms. Currier a reasonable accommodation to which she is legally entitled.

Again, I am hopeful that we are able to resolve this matter without costly and time-consuming litigation. However, if I do not receive a response from you by the close of business on Monday, August 27, 2007, that the NBME will accommodate Ms. Currier's request for sufficient additional break time to allow her to express breast milk during the Step 2 CK and a private room (not a storage room) in which to do so, then we will be forced to take appropriate legal action, including a request for injunctive relief.

Very truly yours,

Christine S. Collins

CSC/MJC/ss

cc:   Sophie C. Currier

# EXHIBIT 6

# GOODWIN | PROCTER

Joseph F. Savage Jr.
617.570.1204
jsavage@
goodwinprocter.com

Goodwin Procter LLP
Counsellors at Law
Exchange Place
Boston, MA 02109
T: 617.570.1000
F: 617.523.1231

August 28, 2007

**By First Class Mail and Facsimile**

Christine S. Collins
Bowditch & Dewey LLP
311 Main Street
PO Box 15156
Worcester, MA 01615-0156

Re:  *Sophie C. Currier/USMLE ID#: 5-083-227-8*

Dear Christine:

This letter is in response to your letter to me, dated August 24, 2007, with respect to Ms.
Currier's request for an additional 60 minutes of break time each day during the administration
of the Step 2 Clinical Knowledge ("Step 2 CK") portion of the United States Medical Licensing
Examination ("USMLE").

As your client knows from the accommodations that have previously been granted to her for
USMLE, additional time is only granted to those who have disabilities under the standards of the
Americans with Disabilities Act ("ADA"). Ms. Currier is provided with double testing time and
a separate testing room on the basis of the supporting documentation she supplied with her initial
request for accommodations in 2001. If Ms. Currier submits to the Office of Disability Services
updated information, such as a note from her treating physician, to document that her covered
disability has changed in such a way that the current accommodation of double time is no longer
appropriate, the NBME will promptly review and seriously consider her request for additional or
different accommodations, with due regard for her needs as a disabled nursing mother, given the
important objective of making the testing conditions fair and equal for all candidates.

Your letter included a reference to an unpublished order from the Montana Supreme Court,
which denied a nursing mother's request for additional time to take the Montana bar examination
but provided the examinee with a modified test environment. *See In Re the Request for
Accommodation of Cassandra Coleman for the July 2005 Montana Bar Examination*, No. 05-
304 (June 25, 2005). While the NBME is not bound by this decision, it has offered Ms. Currier
multiple practical options that would facilitate her expressing milk while taking the examination
on the date she has scheduled. In addition to outlining one possible schedule for taking breaks
between testing blocks, the NBME has offered to permit Ms. Currier to bring multiple,

GOODWIN | PROCTER

Christine S. Collins
August 28, 2007
Page 2

assembled pumps into the facility, thereby saving the time you claim is required to assemble, disassemble and clean a pump during the break. She may leave the test center to nurse the baby, which would also save time to assemble, disassemble and clean the pump. The NBME will permit her to bring food into the testing room, to save the "travel" time mentioned in your letter. While the separate testing room must be monitored for purposes of security, the NBME would arrange to shield your client from observation by other examinees, should she choose to use her breast pump in the testing room.

NBME believes that its policy of granting accommodation requests to examinees with documented disabilities covered by the ADA is essential to its goal of delivering a fair and valid examination. The policy is applied by the Board equally and uniformly, irrespective of the gender of the examinee. To grant additional break time to Ms. Currier for a reason, such as expressing breast milk, not covered by the ADA, would be inconsistent with that goal.

The allegation that your client's request is denied based on some form of discrimination is unsubstantiated, as it ignores the fact that many people, of both genders, contend with conditions, such as gastrointestinal or genitourinary symptoms, that are not disabilities under the ADA, but that may make a testing experience less comfortable or convenient than desired. All examinees, including those with conditions that require them to use the rest room frequently, or access medication or other therapeutic devices, or attend to any other personal need, receive the same 45 minutes of break. To the extent possible and without altering testing or break time, NBME has granted permission for select comfort measures to examinees with temporary conditions. Your client previously received such comfort measures when she was granted permission to bring food and a pillow into the testing room; she has been offered similar measures in this case.

I also note that your letter of August 24, 2007 is replete with factual and legal errors. For example, your letter erroneously asserts that NBME is "a recipient of federal financial assistance under federal law." NBME is an independent, not-for-profit organization that does not receive any federal funding. As you know, the legal claims made in both of your previous letters (including those under Title IX, Section 1983, and the U.S. and Massachusetts Constitutions) apply solely to state actors or those receiving federal funding, of which NBME is neither. As such, those claims simply do not apply to NBME's decision not to grant Ms. Currier additional break time. An effort to seek an injunction pursuant to those statutes would be frivolous and the Board would seek appropriate remedies from any judge before whom those claims were made.

Moreover, in my earlier letter to you I noted that NBME offers the examination 5-6 days per week, year round, thus providing great flexibility for individuals with temporary conditions to schedule their testing at a time most convenient to their professional and personal commitments. Your response to this statement erroneously accuses NBME of putting Ms. Currier in the position of having to choose to delay her medical career and forego valuable professional opportunities in order to continue to breastfeed her daughter. The Board did not put Ms. Currier

# GOODWIN | PROCTER

Christine S. Collins
August 28, 2007
Page 3

in this position. That Ms. Currier finds the NBME's repeated attempts to address her requests insufficiently generous does not mean that NBME is putting her in a position to choose delaying the test and her career.

Indeed, Ms. Currier has been eligible to take Step 2 CK for some time. NBME records show that she originally applied to take Step 2 CK in June 2005. However, she did not test until April 2, 2007 at which time she failed to achieve a passing score.

Thus, to the extent that Ms. Currier needs to take and pass the examination this September in order to qualify for certain professional opportunities, her situation is of her own making.

We continue to disagree that any of the legal claims stated in your previous letters have merit. That said, we will gladly continue to explore options for making Ms. Currier's testing experience as comfortable and accommodating as possible to her desire to express milk, consistent with treating other candidates fairly and obtaining a test result for Ms. Currier that is comparable to those of other candidates. I look forward to working with you to resolve this issue expeditiously.

Very truly yours,

Joseph F. Savage Jr.

LIBA/1825714.1



*Bowditch*
*&Dewey*

Direct telephone: (508) 926-3441
Direct facsimile: (508) 929-3041
Email: ccollins@bowditch.com

August 24, 2007

*VIA FACSIMILE #617-523-1231*
*and FIRST CLASS MAIL*

Joseph F. Savage, Jr., Esq.
Goodwin Procter LLP
Exchange Place
Boston, MA  02109

     *Re:*    *Sophie C. Currier/USMLE ID#: 5-083-227-8*

Dear Attorney Savage:

    Enclosed please find enclosures inadvertently omitted from my letter faxed to you earlier this morning in connection with the above matter.  I apologize for any inconvenience.

       Very truly yours,

       Christine S. Collins

CSC:ss
Enclosures

cc:    Sophie C. Currier (w/enclosures)

Westlaw.

650 F.2d 783

650 F.2d 783

(Cite as: 650 F.2d 783)

▷
Dike v. School Bd. of Orange County, Fla.
C.A.Fla., 1981.

United States Court of Appeals,Fifth Circuit.Unit B
Janice Davis DIKE, Plaintiff-Appellant,
v.
The SCHOOL BOARD OF ORANGE COUNTY,
FLORIDA, and Linton Deck, Individually and as
Superintendent of Schools of Orange County,
Florida, Defendants-Appellees.
Nos. 80-5005, 80-5058.

July 17, 1981.

School teacher brought action challenging school's
refusal to permit her to breast-feed her child during
her duty-free lunch period. The United States District
Court for the Middle District of Florida, John A.
Reed, Jr., J., dismissed the complaint, and teacher
appealed. The Court of Appeals, Godbold, Chief
Judge, held that mother's desire to breast-feed her
child was entitled to constitutional protection and that
it was error to dismiss complaint without trial to
determine whether school board's interests were
strong enough to justify the regulations and whether
the regulations were sufficiently narrowly drawn.

Reversed.
West Headnotes
[1] Federal Courts 170B ◀══▶794

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
         170BVIII(K)3 Presumptions
            170Bk794 k. Pleadings. Most Cited
Cases
For purpose of assessing dismissal of complaint for
failure to state claim, reviewing court regards
plaintiff's allegations as true.

[2] Constitutional Law 92 ◀══▶1093

92 Constitutional Law
   92VII Constitutional Rights in General
      92VII(B) Particular Constitutional Rights
         92k1093 k. Family and Family Law in
General. Most Cited Cases

(Formerly 92k82(10))
Nurturing child by breast-feeding is entitled in some
circumstances to constitutional protection against
state infringement. 42 U.S.C.A. § 1983;
U.S.C.A.Const. Amends. 9, 14.

[3] Schools 345 ◀══▶120

345 Schools
   345II Public Schools
      345II(J) Actions
         345k120 k. Pleading. Most Cited Cases
Complaint against school officials by teacher who
challenged school's refusal to permit her to breast-
feed her child during her duty-free lunch period
stated a cause of action that could only be properly
evaluated after fact finding. 42 U.S.C.A. § 1983;
U.S.C.A.Const. Amends. 9, 14.

[4] Constitutional Law 92 ◀══▶1093

92 Constitutional Law
   92VII Constitutional Rights in General
      92VII(B) Particular Constitutional Rights
         92k1093 k. Family and Family Law in
General. Most Cited Cases
(Formerly 92k82(10))
Constitution protects from undue state interference
citizens' freedom of personal choice in some areas of
marriage and family life. U.S.C.A.Const. Amend. 14.

[5] Parent and Child 285 ◀══▶1

285 Parent and Child
   285k1 k. The Relation in General. Most Cited
Cases
(Formerly 92k82(10))
Parents' interest in nurturing and rearing their
children deserves special protection against state
interference. U.S.C.A.Const. Amend. 14.

[6] Federal Civil Procedure 170A ◀══▶1773

170A Federal Civil Procedure
   170AXI Dismissal
      170AXI(B) Involuntary Dismissal
         170AXI(B)3 Pleading, Defects In, in
General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

650 F.2d 783

650 F.2d 783

(Cite as: 650 F.2d 783)

170Ak1773 k. Clear or Certain Nature of Insufficiency. Most Cited Cases

Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of her claim that would entitle her to relief.

[7] Civil Rights 78 ⌦1176

78 Civil Rights
  78II Employment Practices
    78k1164 Sex Discrimination in General
      78k1176 k. Pregnancy; Maternity. Most Cited Cases
  (Formerly 78k162, 78k110.1, 78k110, 78k13.4(1))
That mother's desire to breast-feed her child is entitled to constitutional protection did not mean that school's restrictions on exercise of such liberty by teacher were necessarily constitutionally invalid. 42 U.S.C.A. § 1983; U.S.C.A.Const. Amend. 14.

[8] Constitutional Law 92 ⌦1050

92 Constitutional Law
  92VII Constitutional Rights in General
    92VII(A) In General
      92k1050 k. In General. Most Cited Cases
  (Formerly 92k82(1))
Constitution does not prohibit all restrictions of protected liberties.

[9] Federal Civil Procedure 170A ⌦1781

170A Federal Civil Procedure
  170AXI Dismissal
    170AXI(B) Involuntary Dismissal
      170AXI(B)4 Particular Actions, Insufficiency of Pleadings in
        170Ak1781 k. In General. Most Cited Cases
School board's interests in avoiding disruption of educational process, in ensuring that teachers perform their duties without distraction, and in avoiding potential liability for accidents are presumably legitimate and whether they are strong enough to justify regulations which barred teacher from breast-feeding her child during her duty-free noon hour, and whether regulations were sufficiently narrowly drawn, must be determined at trial. 42 U.S.C.A. § 1983; U.S.C.A.Const. Amend. 14.

[10] Federal Courts 170B ⌦932.1

170B Federal Courts
  170BVIII Courts of Appeals
    170BVIII(L) Determination and Disposition of Cause
      170Bk932 Reversal or Vacation of Judgment in General
        170Bk932.1 k. In General. Most Cited Cases
  (Formerly 170Bk932)
Reversal of dismissal of civil rights action for failure to state a claim required reversal of award of attorney's fees. 42 U.S.C.A § 1988.

*784 Bredhoff, Gottesman, Cohen & Weinberg, Michael H. Gottesman, Robert M. Weinberg, Gary K. Sasso, Joy L. Koletsky, NEA, Washington, D. C., Ronald G. Meyer, Fla. Teaching Profession NEA, Tallahassee, for Dike.
Rowland & Bowen, Clyde David Brown, II, Andrew Thomas, Orlando, Fla., for defendants-appellees.

Appeals from the United States District Court for the Middle District of Florida.

Before GODBOLD, Chief Judge, FRANK M. JOHNSON, Jr. and ANDERSON, Circuit Judges:
GODBOLD, Chief Judge:
Janice Dike, a teacher in the Orange County (Florida) School System, sued the school board and the superintendent of schools under 42 U.S.C. s 1983, challenging the board's refusal to permit her to breastfeed her child during her duty-free lunch period. Dike alleged that she could breastfeed the child in privacy without any disruption of school activities. She also alleged that breastfeeding was necessary to her child's health. She sought to characterize breastfeeding as a constitutional right with which the school board had unduly interfered. The district court dismissed the complaint and awarded attorneys' fees to the defendants because it deemed the action frivolous. We reverse the dismissal and the award of attorneys' fees.

I. BACKGROUND

[1] For the purpose of assessing the dismissal of the complaint for failure to state a claim, we regard the plaintiff's allegations as true. Radovich v. National Football League, 352 U.S. 445, 448, 77 S.Ct. 390, 392, 1 L.Ed.2d 456, 459 (1957); Reeves v. City of Jackson, Mississippi, 532 F.2d 491, 493 (5th Cir. 1976). Our discussion of the case is therefore based

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on her assertions.

Dike is employed by the school board as a kindergarten teacher at an elementary school. After giving birth to her child she returned to her teaching post. Having chosen to breastfeed her child, Dike wished to feed the child in this manner at all feedings, including the one feeding necessary during the school day. She sought a means of doing so that would not disrupt the education*785 of children attending the school or interfere with her discharge of work responsibilities.

Dike therefore arranged for her husband or her babysitter to bring the child to school during her lunch period, when she was free from any duties. Dike would then nurse the child in privacy in a locked room into which other persons could not see. On occasions when the school asked Dike to perform duties during her lunch period she would hand the infant to her husband or babysitter. She was thus always available for work even during her duty-free hour. She alleges that this routine did not disrupt the educational process at the school or her work performance.

After three months of this routine without disruption or incident the school principal directed Dike to stop nursing her child on campus, citing a school board directive prohibiting teachers from bringing their children to work with them for any reason. The rule's stated rationale is to avoid possible disruptions by the children of teachers and to avoid the possibility of the children having an accident and subjecting the school board to litigation. The principal threatened disciplinary action should Dike continue to nurse the child at school.

Dike heeded these warnings and stopped nursing her child during the school day. But because the child developed an allergic reaction to formula milk, Dike had to artificially extract milk with a breast pump and leave it for the child's mid-day feeding. Dike asserts this new routine caused the child to develop observable psychological changes that also affected her own emotional well-being. She requested permission to resume her earlier procedure, alternatively requesting permission to nurse the child off campus during her non-duty time or to nurse the child in her camper van in the school parking lot. The school board denied these requests, apparently relying on another policy prohibiting teachers from leaving school premises during the school day.

A short time later the infant began refusing to nurse from a bottle. Dike thus had no choice but to breastfeed the child. Because the school board denied her permission to breastfeed on campus or off, Dike was compelled to take an unpaid leave of absence for the remainder of the school term.

Dike sued the board, alleging that it had unduly interfered with a constitutionally protected right to nurture her child by breastfeeding. The district court denied Dike's request for a preliminary injunction and subsequently dismissed her complaint. Because Dike began to wean her child while this appeal was pending her request for injunctive relief may be moot. The back pay claim remains.

## II. ANALYSIS

[2] Our evaluation of plaintiff's claim proceeds in two steps. First, we consider whether her interest in nurturing her child by breastfeeding is entitled in some circumstances to constitutional protection against state infringement. We hold that it is. But a second inquiry, equally critical, concerns the justifications that the school board may have for restricting its employees' exercise of such a right during the work day. We recognize that the school board has legitimate interests in, for example, preventing disruption of the educational process and preventing interference with teachers' efficient performance of their duties.

[3] We conclude that the complaint should not have been dismissed because Dike's interest in breastfeeding during her non-duty time and the school board's interests can only be properly evaluated after factfinding.

### 1. Nature of the Plaintiff's Interest

[4] The Constitution protects from undue state interference citizens' freedom of personal choice in some areas of marriage and family life. These protected interests have been described as rights of personal privacy or as " fundamental" personal liberties. See *786Carey v. Population Services International, 431 U.S. 678, 684, 97 S.Ct. 2010, 2015, 52 L.Ed.2d 675, 684 (1977); Roe v. Wade, 410 U.S. 113, 152-53, 93 S.Ct. 705, 726-27, 35 L.Ed.2d 147, 176-77 (1973); id. at 209-12, 93 S.Ct. at 756-57, 35 L.Ed.2d at 186-87 (Douglas, J., concurring); Griswold v. Connecticut, 381 U.S. 479, 484, 85 S.Ct.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

650 F.2d 783

650 F.2d 783

(Cite as: 650 F.2d 783)

Page 5

1678, 1681, 14 L.Ed.2d 510, 514 (1965). While the opinions of the Court have linked these rights to various constitutional provisions, [FN1] their existence is now an established part of our constitutional jurisprudence.

> FN1. See, e. g., Griswold v. Connecticut, 381 U.S. at 484-85, 85 S.Ct. at 1681-82, 14 L.Ed.2d at 514-15 (Douglas, J.) (right of privacy found in " penumbras" of specific guarantees of the Bill of Rights); id. at 486, 492, 85 S.Ct. at 1686, 14 L.Ed.2d at 516, 519 (Goldberg, J., joined by Warren, C. J., and Brennan, J.) (fundamental personal rights are protected by the concept of liberty in the Fourteenth Amendment's due process clause; Ninth Amendment shows framers' belief that fundamental rights exist that are not enumerated in the Bill of Rights); id. at 500, 85 S.Ct. at 1690, 14 L.Ed.2d at 524 (Harlan, J., concurring) (Fourteenth Amendment's due process clause protects, of its own force, certain basic values); Carey v. Population Services International, 431 U.S. at 684, 97 S.Ct. at 2015, 52 L.Ed.2d at 684 (due process clause protects liberty interests in zones of personal privacy); Roe v. Wade, 410 U.S. at 153, 93 S.Ct. at 726, 35 L.Ed.2d at 177 (right of privacy founded in Fourteenth Amendment's concept of personal liberty and restrictions upon state action); Zablocki v. Redhail, 434 U.S. 374, 383, 98 S.Ct. 673, 679, 54 L.Ed.2d 618, 628 (1978) (state statute preventing persons violating child support orders from remarrying requires critical examination under equal protection clause because it significantly interferes with the exercise of a fundamental right); id. at 395-96, 98 S.Ct. at 686, 54 L.Ed.2d at 636-37 (Stewart, J., concurring) (criticizing majority's analysis as the essence of substantive due process in the guise of equal protection); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (statute requiring sterilization of habitual criminals but exempting certain crimes violates equal protection principles because it infringes the " basic civil rights of man" and does not satisfy strict scrutiny); Cleveland Board of Education v. LaFleur, 414 U.S. 632, 640, 644, 648, 94 S.Ct. 791, 796, 798, 800, 39 L.Ed.2d 52, 60, 62-63, 64 (1974)

(mandatory early pregnancy leave uses unconstitutional " irrebuttable presumption" that burdens protected liberty interests).

[5] Among these protected liberties are individual decisions respecting marriage, [FN2] [FN3] contraception,[FN4] abortion, [FN5] and family relationships.[FN6] The Supreme Court has long recognized that parents' interest in nurturing and rearing their children deserves special protection against state interference. See Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (deciding that a statute requiring children to attend public schools violated the Fourteenth Amendment's due process clause because it unreasonably interfered with the liberty of parents and guardians to direct the upbringing and education of children under their control); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (deciding that a statute forbidding the early teaching of foreign languages at any school unconstitutionally infringed the Fourteenth Amendment's guaranty of liberty because, among other reasons, it interfered with parents' control of their children's education; labeling the right to bring up children among " essential" liberties); Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558 (1972) (deciding that a state could not deny unwed fathers custody of their children without a hearing on parental fitness, stating that a parent's interest in the companionship, care, custody, and management of his or her children warrants particular respect). Cf. *787 Prince v. Massachusetts, 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed.2d 645, 652 (1944) (" It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." ).

> FN2. See Zablocki v. Redhail, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978); Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967).

> FN3. See Cleveland Board of Education v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942).

> FN4. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

650 F.2d 783

650 F.2d 783

(Cite as: 650 F.2d 783)

1029, 31 L.Ed.2d 349 (1972); Carey v. Population Services International, 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

FN5. See Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); Bellotti v. Baird, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979).

FN6. See Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

Breastfeeding is the most elemental form of parental care. It is a communion between mother and child that, like marriage, is " intimate to the degree of being sacred," Griswold v. Connecticut, 381 U.S. at 486, 85 S.Ct. at 1682, 14 L.Ed.2d at 516. Nourishment is necessary to maintain the child's life, and the parent may choose to believe that breastfeeding will enhance the child's psychological as well as physical health. In light of the spectrum of interests that the Supreme Court has held specially protected we conclude that the Constitution protects from excessive state interference a woman's decision respecting breastfeeding her child.

### 2. Justifications for the Regulations

[6][7][8][9] Our conclusion that Dike's interest in breastfeeding is a protected liberty interest, however, is the beginning rather than the end of the constitutional inquiry. We reverse because a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief, Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80, 84 (1957); Cook & Nichol, Inc. v. Plimsoll Club, 451 F.2d 505, 506 (5th Cir. 1971), and because the district court's dismissal rests on the erroneous premise that no specially protected interest is involved. But this does not mean that the school board's restrictions on the exercise of this liberty in the employment context are necessarily constitutionally invalid. The Constitution does not prohibit all restrictions of protected liberties, and the school board may establish by appropriate pleading and proof that its regulations prohibiting teachers from leaving campus or bringing children to school, as applied to teachers who wish to breastfeed their children during non-duty time, further sufficiently important state interests and are closely tailored to

effectuate only those interests. See Roe v. Wade, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147, 178 (1973) (agreeing with lower courts' approach that the privacy right encompassing abortion decisions is not absolute and is subject to some limitation at some point where other interests become dominant, and noting that regulations limiting fundamental rights may be justified only by a compelling state interest and must be narrowly drawn to express only the legitimate state interests at stake); Poe v. Gerstein, 517 F.2d 787, 791-92 (5th Cir. 1975), aff'd mem., 428 U.S. 901, 96 S.Ct. 3202, 49 L.Ed.2d 1205 (1976). Cf. H. L. v. Matheson, - U.S. -, -, n.32, 101 S.Ct. 1164, 1188 n.32, 67 L.Ed.2d 388, 419 n.32 (1981) (Marshall, J., dissenting) (compelling state interest test is commonly used in reviewing state burdens on fundamental rights); Zablocki v. Redhail, 434 U.S. 374, 388, 98 S.Ct. 673, 682, 54 L.Ed.2d 618, 631-32 (1978) (equal protection analysis stating that when a statutory classification significantly interferes with the exercise of a fundamental right it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests, citing cases requiring a compelling state interest and cases requiring " close scrutiny" ). The school board's interests in avoiding disruption of the educational process, in ensuring that teachers perform their duties without distraction, and in avoiding potential liability for accidents are presumably legitimate. Whether these or other interests are strong enough to justify the school board's regulations, and whether the regulations are sufficiently narrowly drawn, must be determined at trial.

### III. ATTORNEYS' FEES

[10] The district court awarded fees to the school board as the " prevailing party" under 42 U.S.C. s 1988 because it judged the complaint groundless and frivolous. The board concedes that reversal of the dismissal would require reversal of the award of attorneys' fees. Cf. *788EEOC v. First National Bank of Jackson, 614 F.2d 1004, 1008 (5th Cir. 1980) (reversing attorneys' fee award to defendant under 42 U.S.C. s 2000e-5(k) because district court should not have dismissed the suit), cert. denied, - U.S. -, 101 S.Ct. 1361, 67 L.Ed.2d 342 (1981).

REVERSED.

C.A.Fla., 1981.
Dike v. School Bd. of Orange County, Fla.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

650 F.2d 783
650 F.2d 783
(Cite as: 650 F.2d 783)

650 F.2d 783

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

RECEIVED

JUN 2 3 2005

MELOY TRIEWEILER

FILED

JUN 2 2 2005

Ed Smith
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 05-304

| | | |
|---|---|---|
| IN RE THE REQUEST FOR ACCOMMODATION | ) | |
| OF CASSANDRA COLEMAN FOR THE | ) | O R D E R |
| JULY 2005 MONTANA BAR EXAMINATION | ) | |

Cassandra Coleman has petitioned the Court for an order granting certain accommodations for her taking of the Montana Bar Examination in July of 2005.

Ms. Coleman is the mother of a child who will be about three and one-half months old at the time of the examination. Ms. Coleman is breast-feeding her child, and she seeks special accommodations to facilitate that process. She petitioned the Board of Bar Examiners for permission to take the examination in a separate room from the other examinees and to be granted a twenty-minute time allowance for breast-feeding during each exam of two hours or more. The Board indicated that it will provide a separate room for her use, but only while she is breast-feeding, and that it will not grant additional time for taking the examinations. Ms. Coleman now asks that this Court order additional time and/or a separate room for the entire exam process.

Having considered the petition and the response of the Board of Bar Examiners, we conclude that, in recognition of Ms. Coleman's privacy interests in breast-feeding her child, and the difficulties inherent in timing the need for the breast-feeding, and in order to disrupt the other examinees as little as possible, a separate room should be provided for Ms. Coleman for the entire examination process. Ms. Coleman will then be in a position to feed her child as the need arises and with as little disruption as possible.

Having accommodated Ms. Coleman's decision to breast-feed her child in privacy and on her own schedule, we conclude that no additional time for taking of the examinations is required or appropriate.

1

THEREFORE IT IS HEREBY ORDERED:

1.    The Board of Bar Examiners shall provide a separate room for Ms. Coleman to take the various portions of the bar examination and shall allow her to breast-feed her infant child as she chooses.

2.    The Board of Bar Examiners need not grant Ms. Coleman any additional time for the taking of the bar examination.

3.    The Clerk is directed to mail a true copy hereof to counsel for Petitioner and to the Administrator of the Montana Bar Examination.

DATED this 21st day of June, 2005.

_____
Chief Justice

_____

_____

_____

_____
Justices

2