# EXHIBIT A
# (PART 8)

# EXHIBIT 1

RECEIVED

JUN 2 3 2005

MELOY TRIEWEILER

FILED

JUN 2 2 2005

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 05-304

IN RE THE REQUEST FOR ACCOMMODATION        )
OF CASSANDRA COLEMAN FOR THE               )          O R D E R
JULY 2005 MONTANA BAR EXAMINATION          )

Cassandra Coleman has petitioned the Court for an order granting certain accommodations for her taking of the Montana Bar Examination in July of 2005.

Ms. Coleman is the mother of a child who will be about three and one-half months old at the time of the examination.  Ms. Coleman is breast-feeding her child, and she seeks special accommodations to facilitate that process.  She petitioned the Board of Bar Examiners for permission to take the examination in a separate room from the other examinees and to be granted a twenty-minute time allowance for breast-feeding during each exam of two hours or more. The Board indicated that it will provide a separate room for her use, but only while she is breast-feeding, and that it will not grant additional time for taking the examinations.  Ms. Coleman now asks that this Court order additional time and/or a separate room for the entire exam process.

Having considered the petition and the response of the Board of Bar Examiners, we conclude that, in recognition of Ms. Coleman's privacy interests in breast-feeding her child, and the difficulties inherent in timing the need for the breast-feeding, and in order to disrupt the other examinees as little as possible, a separate room should be provided for Ms. Coleman for the entire examination process. Ms. Coleman will then be in a position to feed her child as the need arises and with as little disruption as possible.

Having accommodated Ms. Coleman's decision to breast-feed her child in privacy and on her own schedule, we conclude that no additional time for taking of the examinations is required or appropriate.

1

THEREFORE IT IS HEREBY ORDERED:

1.   The Board of Bar Examiners shall provide a separate room for Ms. Coleman to take the various portions of the bar examination and shall allow her to breast-feed her infant child as she chooses.

2.   The Board of Bar Examiners need not grant Ms. Coleman any additional time for the taking of the bar examination.

3.   The Clerk is directed to mail a true copy hereof to counsel for Petitioner and to the Administrator of the Montana Bar Examination.

DATED this 21st day of June, 2005.

_____
                Chief Justice

_____

_____

_____

_____
                Justices

2

# EXHIBIT 2



Jennifer S. Hendricks
MELOY TRIEWEILER
The Bluestone
80 South Warren, P.O. Box 1241
Helena MT 59624
(406) 552-8670
(406) 552-4953 facsimile
*Attorney for the Petitioner*

IN THE SUPREME COURT OF THE STATE OF MONTANA

| | |
|---|---|
| In re Request for Accommodation of Cassandra Coleman for July 2005 Bar Exam. ) ) ) ) ) | **VERIFIED PETITION FOR ACCOMMODATION** |

PETITION FOR REVIEW OF THE DECISION OF THE
MONTANA BOARD OF BAR EXAMINERS

COMES NOW Petitioner Cassandra Coleman and petitions this Court for an order granting an accommodation for the July 2005 Montana Bar Exam. Petitioner requests accommodation for the physical demands of nursing an infant.

**BACKGROUND**

Ms. Coleman is a 2005 graduate of the School of Law at the University of Montana. She has applied to take the Montana bar exam on July 27-29, 2005.

On April 5, 2005, Ms. Coleman gave birth to her second child, Kade Coleman Winger. Consistent with the overwhelming consensus of medical and other qualified opinions, Ms. Coleman has initiated breastfeeding and intends to

feed Kade exclusively with breast milk for at least the first six months of his life, and to continue nursing until he is two years old. *See* Ex. 1 at 1.

At the time of the bar exam, Kade will be about 3½ months old. A child of that age needs to nurse approximately every two hours. Because of the direct supply and demand relationship required with exclusive breastfeeding, Ms. Coleman needs to either to nurse her baby or express milk with a breast pump every two hours to maintain an adequate milk supply and to avoid engorgement and other related medical conditions, such as clogged milk ducts and mastitis. *See* Ex. 1 at 1-2, 4-5.

In anticipation of Kade's birth, Ms. Coleman submitted an application for an accommodation of her breast-feeding during the July 2005 bar exam. (Exhibit 1.) The bar exam is administered in three-hour and four-hour sessions. Ms. Coleman explained her need to nurse or use a breast pump every two hours. She requested permission to take a 20-minute break during each test session longer than two hours. During this break, Ms. Coleman would completely stop working on her test, leave the testing room, and express her milk. She also asked that this time not be counted toward her total time for working on the exam. *See* Ex. 1.

Ms. Coleman's request was denied by letter dated March 4, 2005, from Jan Weber, Bar Admissions Administrator. (Exhibit 2.) Ms. Weber stated two reasons for denying Ms. Coleman's request: (1) Ms. Weber stated that "nursing an infant is not a qualifying disability under the ADA." Based on that threshold determination,

Ms. Weber did not consider the reasonableness of the requested accommodation.
(2) Ms. Weber also stated, "[W]e have denied such requests in the past." *See* Ex. 2.

In fact, administrators of the bar exam have previously accommodated a nursing mother who was taking the exam. She was allowed to take her exam in a supervised separate room; the accommodation was that if the baby needed to nurse, her husband could bring the baby into the testing room. *See* Ex. 3 at 15.

Ms. Coleman asked the entire Board of Bar Examiners to consider her request. (Exhibit 3.) The Board responded by letter dated April 18, 2005. (Exhibit 4.) The Board granted Ms. Coleman's request to leave the testing room to nurse her baby or use a breast pump, but it denied her request that the time spent doing so not be counted against her time on the test. Instead, the Board indicated that Ms. Coleman could take her test materials with her to a separate room where she would be nursing or pumping. *See* Ex. 4.

Ms. Coleman, through the undersigned, made a subsequent oral request to the chairman of the Board of Bar Examiners regarding the logistical difficulties involved in trying to coordinate Ms. Coleman's departure from the testing room with the infant's being awake and hungry, as well as the disturbance to other test-takers created by Ms. Coleman gathering all her materials and then returning with them 20 minutes later. Petitioner believes it would be far preferable, for her and for other test-takers, to place her in a separate room for the entire test, as was done at least once in the past.

The Board denied this request by email dated May 4, 2005. (Exhibit 5.)

Ms. Coleman has recently supplemented her initial request with a statement from her midwife. (Exhibit 6.) In addition, she has recently been diagnosed with a plugged milk duct, greatly amplifying her need to nurse or express her milk regularly and frequently in order to avoid mastitis.

By this petition, Ms. Coleman seeks this Court's review of the denial of her initial request for accommodation, as well as the denial of her alternative request for the same accommodation that was granted in the past, pursuant to Rule 103C of the Montana Board of Bar Examiners' Rules and the Court's inherent authority over all matters related to the bar exam and bar admissions in Montana.

## DISCUSSION

Both Ms. Weber and the Board based their denials on the premise that "nursing an infant is not a qualifying disability." This conclusion ignores the extensive information Ms. Coleman has provided regarding the physical demands of full-time breastfeeding, which are at least as restrictive on the mother's activities as conditions which the Board would recognize as disabilities. *See* Ex. 1 at 1-3; Ex. 3 at 16-27. This Court's precedents make clear that the fact that breastfeeding is a normal, healthy part of a woman's life does not justify putting it in a category by itself, separate from physical conditions recognized as "disabilities" and therefore not entitled to accommodation.

### Disability and Sex Equality

A normal, uncomplicated pregnancy is not a "disability" or "illness" in any ordinary sense, yet this Court held in *Mountain States Telephone & Telegraph*

*Company v. Commissioner of Labor & Industry* (1979), 187 Mont. 22, 608 P.2d

1047, and *Bankers Life & Casualty Insurance Company v. Peterson* (1993), 263

Mont. 156, 866 P.2d 241, that, *as a matter of sex equality*, pregnancy must be

treated comparably to other conditions requiring medical care or imposing physical

restrictions. The Montana Legislature has similarly recognized that employers must

accommodate the physical demands of pregnancy by making reasonable allowances

for maternity leave. *See* §§ 49-3-310, *et seq.*, MCA.

The *Mountain States* court's explanation of why unequal treatment of

pregnancy constitutes sex discrimination is equally applicable to breastfeeding:

> Pregnancy is a condition unique to women, and the ability to become
> pregnant is the primary characteristic of the female sex. Thus, any
> classification which relies on pregnancy as the determinative criterion
> is a distinction based on sex. ... By definition, [placing pregnancy in a
> class by itself] discriminates on account of sex; for it is the capacity to
> become pregnant which primarily differentiates the female from the
> male.

*Mountain States*, 187 Mont. at 38-39, 608 P.2d at 1056 (quoting *Ill. Bell Tel. Co. v.*

*Fair Employment Practices Comm'n* (1979), 386 N.E.2d 599, 602 (Ill. App.)

(quoting *GE v. Gilbert* (1976), 429 U.S. 125, 149 (Brennan, J., dissenting), and *id.*

at 161-62 (Stephens, J., dissenting)) (alteration by *Illinois Bell*). In reaching this

conclusion, this Court rejected the U.S. Supreme Court's reasoning in *Gilbert* and

in *Geduldig v. Aiello* (1974), 417 U.S. 484, that pregnancy discrimination is not

discrimination between women and men but between "pregnant women and non-

pregnant persons." *Geduldig*, 417 U.S. at 497 n.20. That view has been rejected

not only by this Court but also by the majority of state supreme courts to consider

the issue, the U.S. Congress, and the Montana Legislature. *See Mountain States*, 187 Mont. at 36-37, 608 P.2d at 1056 (noting *Gilbert*'s "checkered history"); §§ 49-3-310, *et seq.*, MCA.

The biological relationship created by pregnancy does not end at birth. It continues and is important to the health of the mother and the child. *See* Ex. 3 at 17 ("Breastfeeding and the Use of Human Milk," Policy Statement of the American Academy of Pediatrics). While just as not all women become pregnant, not all mothers breastfeed, but the intimate decision to breastfeed is constitutionally protected, see *infra*. Breastfeeding is sufficiently beneficial to the health of mother and child that the State of Montana encourages breastfeeding as a matter of public policy. § 50-19-501, MCA; Ex. 1 at 1-2. Like pregnancy, lactation, while not universal among women, is unique to the female sex:

> [Lactation] is a condition unique to women, and the ability to [lactate] is the primary characteristic of the female sex. Thus, any classification which relies on [lactation] as the determinative criterion is a distinction based on sex. ... By definition, [placing breastfeeding in a class by itself] discriminates on account of sex; for it is the capacity to [lactate] which primarily differentiates the female from the male.

Under the reasoning of *Mountain States* and *Bankers Life*, accommodating physical restrictions that are "disabilities" but refusing to accommodate physical characteristics unique to women constitutes sex discrimination. Such discrimination violates the ban on sex discrimination in governmental services and public accommodations in the Montana Human Rights Act, §§ 49-2-304, 49-2-308,

MCA. It also violates the Equal Protection Clause of Article II, § 4 of the Montana

Constitution.

When the U.S. Supreme Court held to the contrary in *Geduldig* and *Gilbert*

(cases arising under the Fourteenth Amendment and Title VII, respectively),

Congress's response was § 701(k) of the Civil Rights Act of 1964. Commonly

known as the Pregnancy Discrimination Act, its scope is broader than a prohibition

of discrimination based on pregnancy itself:

> The terms "because of sex" or "on the basis of sex" include, but are
> not limited to, because of or on the basis of pregnancy, childbirth, *or*
> *related medical conditions*; and women affected by pregnancy,
> childbirth, *or related medical conditions* shall be treated the same for
> all employment-related purposes, including receipt of benefits under
> fringe benefit programs, as other persons not so affected but similar in
> their ability or inability to work.

42 U.S.C. § 2000e-(k) (emphases added). Because lactation is plainly a medical

condition related to pregnancy, the PDA thus requires that a lactating woman be

accommodated to the same extent as anyone else with similar physical needs.

Although the PDA applies in the employment context, it reflects a congressional

determination of what constitutes sex equality and should guide the Court in its

consideration of Ms. Coleman's request.

An analogy in the test-taking context can be found in *Agranoff v. Law School*

*Admissions Council, Inc.* (1999), 97 F.Supp.2d 86 (D. Mass.). The plaintiff in

*Agranoff* suffered from a "physiological/neurological disorder ('focal dystonia')

that causes severe cramping and fatigue of his hand when writing or holding a pen."

*Id.* at 86. The federal district court issued a preliminary injunction ordering that he

be allowed "time and a half" on the multiple choice section of the LSAT. His situation is analogous to that of the breastfeeding mother in that he was not able to sustain the necessary physical activity for the duration of the test but would need time to relieve the cramping in his hand. *Cf.* Ex. 1 at 3 (describing the need to express milk in order to relieve engorgement). Ms. Coleman's requested accommodation is far more minimal than the accommodation granted by preliminary injunction in *Agranoff*.

The Montana Human Rights Act contains an exception allowing sex-based discrimination when "reasonably necessary." This "reasonableness" standard must be strictly construed but in many ways could be considered analogous to the "reasonable accommodation" standard used in disability cases. However, because the prohibition on sex discrimination is also contained within the Declaration of Rights of the Montana Constitution, any discrimination on the basis of sex is subject to strict scrutiny. *MEIC v. DEQ*, 1999 MT 248, 296 Mont. 207, 988 P.2d 1236. Ms. Coleman's request is for a minimal accommodation that is closely tailored to the need to express her milk. Denial of this request cannot survive even the "reasonably necessary" standard of the Human Rights Act, let alone strict scrutiny.

### *Fundamental Rights*

Ms. Coleman's original request cited federal case law protecting a mother's right to breastfeed her child as fundamental under the Due Process Clause of the Fourteenth Amendment. Ex. 1 at 2; *see Dike v. Sch. Bd.* (1981), 650 F.2d 783 (5th

Cir.), *overruled on other grounds, as to subsequently created Eleventh Circuit,*

*Shahar v. Bowers* (1997), 114 F.3d 1097 (11th Cir.); *Berrios-Berrios v. Thornburg*

(1989), 716 F.Supp. 987, 991 (E.D. Ky.). Protection of intimate relationships,

privacy, and intensely personal decisions about family and child-rearing is at least

as strong under the Montana Constitution as under the federal Constitution. *See*

Mont. Const. art. II, §§ 3, 4, 10.

In addition, the Court should note that the fundamental rights of *two* people

are at issue here. When the Constitution protects an intimate relationship, it

protects it for both participants, the mother and the baby. *See* Mont. Const. art. II,

§ 15. Moreover, the Montana Constitution expressly protects the right to pursue

life's basic necessities, seeking safety, health, and happiness is all lawful ways.

Mont. Const. art. II, § 3. It is difficult to imagine a more primal example of life's

basic necessities than mother's milk.

By denying Ms. Coleman's requests for accommodation, the Board is

unreasonably interfering with her fundamental right to breastfeed, as continuing to

breastfeed through the bar exam will result in her having to repeatedly leave the

exam room to express milk during time other examinees are taking the exam.

Further, Ms. Coleman will be in extreme discomfort as her breasts fill with milk;

she will risk infection that could require surgery; and she will risk depleting her

milk supply if she does not stop taking the exam to express milk at regular

intervals. The denial of Ms. Coleman's requests for accommodations unreasonably

interferes with her fundamental right to make intimate decisions regarding her family and with her son's right to pursue life's basic necessities.

*Reasonableness of the Accommodation*

Although explicitly claiming that its Rules preclude any accommodation of a sex-specific physical condition not deemed a "disability" by the Board, the Board's response to Ms. Coleman's request implicitly recognizes that an accommodation is appropriate. Immediately after stating that breastfeeding is "not a qualifying disability" eligible for accommodation, the Board nonetheless suggested a partial accommodation. *See* Ex. 4; *see also* Ex. 5. This approach lacks analytical sense: the Board recognizes the need for an accommodation in the form of a private space to nurse or pump, but then resorts to a threshold determination of "no disability" in order to avoid even considering the reasonableness of Ms. Coleman's request for extra time. In doing so, the Board tries to avoid having to justify why, for example, the plaintiff in *Agranoff* was entitled to extra time to relieve pain in his hand, incurred in order to facilitate a particular test-taking technique, but Ms. Coleman may not have extra time to relieve pain from engorgement of her breasts and the risk of a breast infection that also raises the prospect of decreasing her milk supply to the point that it will be inadequate for Kade's good health.

Ms. Coleman's requested accommodation is eminently reasonable. Her detailed explanation of the process of breastfeeding, including her own experience with her first child, makes clear that her request is carefully tailored to the requirements for expressing milk. *See* Ex. 1. The immediate need to relieve

engorgement as well as the long-term need to maintain a healthy milk supply and avoid infection requires Ms. Coleman to express milk during the exam. The time required to do so is much greater than the time that other test-takers will use in going to restroom, and Ms. Coleman will not be able to work on the test while expressing milk, as using a breast pump requires two hands. In addition, under normal circumstances, the release of milk is stimulated by the baby's suckling, or sometimes even by the baby's hungry cry. A breast pump is a poor substitute for a baby, and expressing milk requires simultaneous relaxation and concentration on the release of milk; some women also rely on a prop, such as a picture of the baby. In other words, Ms. Coleman will not even be able devote her thoughts to the exam while she is trying to express milk. Moreover, at the time of the exam, Ms. Coleman will not have slept for more than about two hours at a time for four months, hardly an ideal state in which to take the bar exam. *Cf. PGA Tour, Inc. v. Martin* (2001), 532 U.S. 631, 690 (holding that golf cart was reasonable accommodation in part because Casey Martin "endures greater fatigue even with a cart than his able-bodied competitors do by walking"). Ms. Coleman therefore asks that the Court allow her to take the bar exam with the time she spends nursing or expressing milk not counted against her total time on the exam.

In the alternative, Ms. Coleman asks that she be granted the same accommodation that was granted to a previous nursing mother who took the bar exam. The Board's refusal to grant this alternative accommodation is difficult to understand. Although the chairman's e-mail (Exhibit 5) claims that setting up a

separate room would indicate that Ms. Coleman has a disability, the Board has already agreed to "arrange for a private area" for Ms. Coleman to take the test, in the presence of a female proctor, while nursing or pumping. *See* Ex. 4. The only difference is whether she stays in that area for the entire exam session, or must interrupt her work and the work of other examinees in order to carry her materials back and forth from that area to the main testing room. In addition, although the Board states that Ms. Coleman may use the "private area" either to nurse her baby or to use a breast pump, the arrangement it proposes would make it virtually impossible for Ms. Coleman to nurse the baby: She would have to guess when the baby was both awake and hungry, and if she guessed wrong she would have closed her books, gathered her materials, and left the testing room for no reason, only to go back in and try again a few minutes later. In effect, Ms. Coleman—and, presumably, all future nursing mothers who aspire to become lawyers in the State of Montana—will be limited to use of a breast pump during the exam, apparently without regard to potential problems such as difficulty expressing with a pump or the baby refusing to take a bottle (a common occurrence at certain ages for breast-fed infants).

Ms. Coleman's request for accommodations should be granted as it is within the intent and spirit of the Board's Rules, which is to ensure all examinees are on a "level playing field" while taking the exam. By permitting Ms. Coleman to leave the testing room for 20 minutes so she can express milk, Ms. Coleman will be "on a level playing field" with the other, non-lactating examinees.

## REQUEST FOR RELIEF

Ms. Coleman respectfully asks this Court to grant her the accommodation she initially requested: permission to take a 20-minute break for nursing and/or pumping during each exam session longer than two hours, with the time not counted toward her total time on the exam.

In the alternative, Ms. Coleman asks the Court to grant her the same accommodation previously granted to a nursing mother, so that she can nurse her baby and/or use a breast pump without unnecessarily disrupting both her work on the exam and the work of others seated near her in the testing room.

Respectfully submitted this 25th day of May, 2005,

MELOY TRIEWEILER

By: _____
JENNIFER S. HENDRICKS

## VERIFICATION

I am the petitioner in this matter. All of the facts stated in this petition are true and correct to the best of my knowledge and belief, and the attached exhibits are true and accurate copies of the documents they purport to be.

DATED this 23 day of May, 2005.

By: _____
CASSANDRA COLEMAN

STATE OF MONTANA )
        : ss
County of Lewis and Clark )

SUBSCRIBED AND SWORN TO before me this _23_ day of May, 2005.

(SEAL)

*Charlotte Welmerton*
Notary Public for the State of Montana
Residing at *Missoula Mont*
My commission expires *July 7, 2008*

## CERTIFICATE OF SERVICE

I hereby certify that on the _26th_ day of May, 2005, a true copy of the

foregoing document was served by United States mail, postage prepaid, upon the

following:

 Ms. Jan Weber
 Montana Board of Bar Examiners
 P.O. Box 577
 Helena MT 59624

JENNIFER S. HENDRICKS

# EXHIBIT 1
## to
## Verified Petition for Accommodation

# In re Request for Accommodation
## of Cassandra Coleman
## for July 2005 Bar Exam

February 23, 2005

Board of Bar Examiners
P.O. Box 577
Helena, MT 59624
(406)442-7660

Dear Board of Bar Examiners,

I am writing to request special accommodations for the July 2005 MBE and essay bar exams. I am currently pregnant with an estimated due date of March 24, 2005. At the time of the bar exam, my infant will be about 4 months old. Pursuant to the recommendations of the American Academy of Pediatrics and the World Health Organization, I plan to exclusively breastfeed my infant for six months, with continued breastfeeding and solid foods for two years. I followed these recommendations with my first child and am well aware of the limitations breastfeeding imposes on my activities of daily living. Specifically, breastfeeding an infant requires nursing the child approximately every two hours, a process which lasts about 20-30 minutes.

Breastfeeding imposes various significant impairments upon a mother's daily life, including a complete cessation of all other activities every two hours in order to nurse a child or express milk manually or through the use of a breast pump. The ability to maintain continuous activity, such as work or sleep, for longer than two hours is of central importance to most people's lives, particularly when taking a bar exam lasting three days. Breastfeeding my first child substantially impaired life in that I was unable to sleep through the night for more than two years, as I was nursing the child during the night; I had to schedule regular breaks every two hours during my day to either come home and nurse my child or express milk with the use of a breast pump; and I had to wear supportive bras with pads to minimize staining my clothes with leaking milk. Breastfeeding imposes several significant impairments and limitations upon mothers; I personally experienced such inevitable limitations throughout the duration of my breastfeeding relationship with my first child, and I fully expect to experience the same limitations upon my daily life throughout the duration of my breastfeeding relationship with my next child.

Although breastfeeding imposes several significant impairments upon the daily activities of the mother, the benefits to both mother and child have lead the Montana Legislature to pass legislation encouraging breastfeeding, and the American Academy of Pediatrics and the World Health Organization to recommend exclusive breastfeeding for the first six months of a child's life, with continued breastfeeding until the child is at least two years old. In statutorily mandating that a mother has the right to breastfeed in public, Mont. Code Ann. § 50-19-501 (2003), the Montana Legislature found:

> WHEREAS, there are benefits to the child, the mother, and society by encouraging and enabling mothers to breastfeed their children; and WHEREAS, an infant who is breast-fed receives protection against infection, illness, and

(1)

allergies and long-term positive effects on the development, intelligence, and health of breast-fed children have been found; and WHEREAS, a protective effect against various types of cancer and greater emotional and physical health are found for mothers who breastfeed; and WHEREAS, breastfeeding promotes sufficient birth spacing, improved vaccine effectiveness, and decreased food and medical expenses, which all have positive societal effects; WHEREAS, the Montana Supplemental Nutrition Program for Women, Infants, and Children (WIC) promotes breastfeeding education and support; and WHEREAS, legislation to clarify the right to breastfeed is necessary to promote breastfeeding by mothers and remove any stumbling block from influencing a mother's decision to breastfeed or continue breastfeeding out of fear of reprisal. .

Further, the courts have held breastfeeding is a fundamental right, protected by the United States Constitution, with which states cannot excessively interfere. "[B]reastfeeding is the most elemental form of parental care. It is a communion between mother and child, that, like marriage, is intimate to the degree of being sacred." *Dike v. School Board*, 650 F.2d 783 (5th Cir. 1981). In considering state agencies' policies regarding breastfeeding, a federal court concluded, "that it will be a very sad day in America when allowing a mother to breast-feed her infant disserves the public interest." *Berrios-Berrios v. Thornburg*, 716 F.Supp. 987, 991 (E.D. Kentucky 1989).

Recently, the American Academy of Pediatrics issued its policy statement, "Breastfeeding and the Use of Human Milk," which details the history of breastfeeding in the United States, the need for breastfeeding and the problems and circumstances surrounding the lack of breastfeeding in this country. One of the major obstacles interfering with a woman exercising her right to breastfeed is lack of support and facilities for breastfeeding in the workplace. However, the highest rates of breastfeeding occur among women in the same demographics as those taking the Montana bar exam: college-educated women living in the Mountain and Pacific regions of the United States.

Because of the strong legislative and academic policy statements regarding breastfeeding and the courts' characterization of breastfeeding as a fundamental right protected by the U.S. Constitution, I would encourage this Board to accommodate breastfeeding mothers during the administration of the bar exam.

In order to maintain a breastfeeding relationship when a mother is unable to nurse the child upon demand, milk must be expressed from the mother's breasts in the same intervals as the child requires feedings, approximately once every two hours for a 4-month-old child. If I am unable to breastfeed my infant, I must express milk manually or with the use of a breast pump every two hours to maintain an adequate milk supply to continue breastfeeding for the recommended duration. Milk expression with the use of a pump takes about 20-30 minutes.

The bar exam, which is administered in two 3 hour segments on the first day, one 4 hour segment and one 3 hour segment on the second day, and one 4 hour segment on the third day, will severely interfere with the breastfeeding relationship between myself and my





infant. In order to maintain a breastfeeding relationship, I am respectfully requesting this Board to grant me special accommodations for the exam, specifically an additional 20 minutes per exam segment, which I will use to express milk. In the alternative, I would request the exam time stop for me for 20 minutes per exam segment while I express milk, or that I am allowed to bring my infant into the testing area in order to nurse the infant while taking the test.

If I am unable to express milk during a 3-4 hour period, my breasts will become engorged when the milk comes in every two hours, which will have several adverse effects. Unrelieved pressure in my breasts from unexpressed milk will cause painful engorgement of the breasts, resulting in leaking milk, and the risk of a breast infection serious enough to require surgery. These conditions are not endured by those taking the bar exam who are not lactating. Permitting me additional time, which I will use to express milk during the exam, will allow me to be "on an even playing field" with those non-lactating participants in the bar exam. The minimal accommodations I have requested in the form of additional time will not impose an undue burden upon the Board and will not in any way compromise the validity or the security of the examination, as I would express milk within the boundaries of the testing area.

I will provide documentation of my breastfeeding relationship with a Medical Verification Form signed by either my midwife, the infant's pediatrician, a certified lactation consultant or another qualified medical care provided familiar with the breastfeeding relationship between myself and my child. I sincerely request this Board honor this request for minimal special accommodations during the July 2005 bar examination.

Enclosed please find a copy of the American Academy of Pediatrics policy statement, "Breastfeeding and the Use of Human Milk." If you have any questions or require further documentation, please contact me at (406) 829-6489 or cassiecoleman@hotmail.com. Thank you for your consideration of this important matter.

Sincerely,

Cassandra Coleman

BOARD OF BAR EXAMINERS • P.O. BOX 577 • HELENA, MT 59624 • (406) 442-7

## Special Accommodations Request Form

If you have a disability and would like to request an accommodation under the Americans with Disabilities Act, pleas complete and return this form. Please also have the Medical Verification Form completed by your physician or othe licensed professional and returned to us. PLEASE PRINT OR TYPE.

1. Cassandra Lee Coleman                        (406)829-6489
   Name                                          Daytime Phone Number(s)

2. 2117 Pardee Ct.        Missoula          MT        59801
   Home Address          City              State      ZIP

3. _____        _____    _____    _____
   Office Address         City               State      ZIP

4. Examination Applied For: MBE and Essay                 July 2005
                            MBE and/or Essay (specify)    Month/Year

5. Nature of your disability (check all that apply).
   ☐ Blind                    ☐ Learning Disability       ☒ Other (specify)
   ☐ Visually Impaired        ☐ Psychological Disability   Breast-feeding infan
   ☐ Physical Disability      ☐ Hearing Impaired           _____

6. Please describe in detail the physical or mental impairment that you claim warrants an accommodation on the b examination. (Attach additional pages if necessary.)
   I will be nursing a 3½-4 month old infant in July 2005. The child will need to be fed approximately every 2 hours, which is how often my milk will come in, requiring expression by either pumping the milk or feeding the baby. Inability to relieve the pressure caused by the milk in my breasts may result in pain and infect requiring surgery.

7. When was your disability/condition first diagnosed? Expected due date: March 24, 2005

8. Is this a permanent condition or disability?                                    ☐ Yes  ☒ No
   If no, when is the condition or disability likely to abate? Around Spring 2007
   If yes, please submit supporting evidence.

9. Please describe in detail how the impairment substantially limits you in a major life activity of central importance daily life. (Attach additional pages if necessary.)
   As I must relieve pressure in my breasts caused by milk, I must discontinue all activity every 2 hours and feed my infant or express the milk through the use of a pump.

10. Please describe in detail how the impairment is substantial in terms of your own experience, including, but not limite to, its history of impact on your life. Please also submit any supporting medical diagnosis and information. (Attac additional pages if necessary.)
    Breastfeeding is beneficial to both mother and child - including decreased risk of diarrhea, respiratory infection, otitis media, bacteremia, meningitis, botulism, urinary tract infection. Breastfeeding also increases a mother's levels of oxytocin to decrease postp bleeding + increase uterine involution. It also reduces my risk of ovarian + breast cancer

(4)

11. Did you receive testing accommodations and/or extra time for any exams in college or law school?   ☐ Yes  ☒ No
If yes, please describe: _I was not breast feeding at this time_

12. Did you receive testing accommodations and/or extra time for any other bar examination?   ☐ Yes  ☒ No
If yes, please describe: _____

If you answered yes for questions 11 and/or 12 please submit documentation that such accommodation was provided.
Letters from the appropriate official(s) of the college, law school, or bar admissions office is sufficient.

13. Are you requesting a different type of accommodation than has been provided to you in the past?   ☒ Yes  ☐ No
If yes, please describe: _I am requesting extra time to take the exam so I may_
_leave the test to express milk._

14. Please check all the accommodations you believe are necessary for you to take the Montana Bar Exam.
   ☐ Large print exam (Circle one: 18 or 24 pt)          ☐ Use of medications
   ☐ Use of reader                                        ☐ Separate testing area
   ☐ Use of magnifier                                     ☐ Other (specify)
   ☐ Audio cassette version of exam                       _____
   ☐ Use of scribe to record responses                    _____
   ☐ Wheelchair accessibility                              _____
   ☒ Additional testing time.  Specify the amount of time required for each examination session.  (If a specific amount of
      additional time is not indicated, none will be granted.)
      _For every exam segment lasting longer than 2 hours, I am requesting an_
      _additional 20 minutes, which I will use to express milk._

15. Please describe how the accommodation you requested is tailored to addressing the impairment as it relates to the bar
examination, and on what grounds the accommodation will allow you to perform "on a level playing field" with other
applicants.  (Attach additional pages if necessary.)
   _Permitting me to extend my testing time to allow for expression of milk will_
   _enable me to continue my breastfeeding relationship without risk of infection_
   _that may require surgery.  Also, I could take the exam without leaking milk_
   _on the test or enduring extreme pain - circumstances similar to those non-lactating_
   _test-takers will take the test under._
I affirm that the foregoing information is true and correct.  I further understand that the Board of Bar Examiners reserves
the right to make final judgment concerning testing accommodations for the Montana Bar Examination and may have this
documentation reviewed by a medical specialist, psychologist, learning disability specialist, or other specialist as
appropriate.

_____
Applicant's Signature

SUBSCRIBED & SWORN TO before me this _18_ day of _February_, 200_5_ by _Cassie Coleman_

_PEG J. LASLOVICH_
Printed Name of Notary: _Peg J. Laslovich_
Notary Public for the State of _Montana_
Residing at _Missoula, MT_
My Commission Expires _3/31/2007_

(5)

Revised 6/21/04

*[Notary seal: PEG J. LASLOVICH — NOTARIAL SEAL — STATE OF MONTANA]*

# EXHIBIT 2
## to
## Verified Petition for Accommodation

# In re Request for Accommodation
## of Cassandra Coleman
## for July 2005 Bar Exam



## STATE OF MONTANA
# BOARD OF BAR EXAMINERS

7 West 6ᵗʰ Avenue, Suite 2B
P.O. Box 577
Helena, MT 59624
Phone: (406) 442-7660
Fax: (406) 442-7763

March 4, 2005

CHAIR

ANDY J. COX
Attorney at Law
P.O. Box 9199
Missoula, MT 59807
Phone: (406) 543-9646

VICE CHAIR

JACQUELINE TERRELL LENMARK
Attorney at Law
50 S. Law Chance Gulch
Helena, MT 59601
Phone: (406) 442-0230

MEMBERS

ICE   B. ANDERSON
       at Law
  .O. Box 3253
Billings, MT 59103
Phone: (406) 765-8964

RAY W. DELLAND
Attorney at Law
P.O. Box 2269
Great Falls, MT 59403-2269
Phone: (406) 727-5800

FRED J. O'TOOLE, II
Attorney at Law
89 N. Main
Kalispell, MT 59214
Phone: (406) 765-1630

BRA D. PARKER
Attorney at Law
.O. Box 9101
Missoula, MT 59807
Phone: (406) 327-1517

EN J. RICHARDSON
Attorney at Law
945 Six Burt Drive, Suite 1
ozeman, MT 59715
Phone: (406) 586-8700

B ADMISSIONS ADMINISTRATOR

J WEBER
O. Box 577
elena, MT 59624
Phone: (406) 447-2207
weber@montanabar.org

Cassandra Coleman
2117 Pardee Court
Missoula, MT  59801

RE:   Special Accommodation Request

Dear Ms. Coleman:

We received your request to have extra time during the bar examination in order to nurse your baby.  As nursing an infant is not a qualifying disability under the ADA, you will not be granted any additional time.  Further, we have denied such requests in the past.

However, you may be seated near a doorway during each exam session, if you wish. All examinees are allowed to take restroom breaks whenever they wish, but are not granted extra time to do so and may not leave the immediate lobby area.

Please let me know if you have any questions in this regard.

Sincerely,

JAN WEBER
Bar Admissions Administrator

/jw

# EXHIBIT 3

Medical Student Handbook, The U.S. Medical Licensing Examination (U.S.M.L.E.)

Case 1:07-cv-11691-WGY   Document 19   Filed 09/11/07   Page 30 of 31
Page 1 of 2

UNIVERSITY OF ROCHESTER MEDICAL CENTER

Search      Directory      News      Events      Strong Health      URMC Home

Alumni

Departments
and Clinical
Centers

Educational
Programs

Student
Resources

Instructor
Resources

SMD Home

## School of Medicine and Dentistry



### Medical Student Handbook

### The U.S. Medical Licensing Examination (U.S.M.L.E.)

| MEDICAL EDUCATION OBJECTIVES | ▼ |  |

The National Board Examination, (now re-designated the United States Medical Licensing Examination (USMLE), was established in 1915 to offer a uniform method of medical licensure in this country. USMLE is a joint program of the National Board of Medical Examiners and the Federation of State Medical Boards of the U.S., Inc. It now represents the single, uniform examination for medical licensure in the United States. It replaces the Federation Licensing Examination (FLEX) and the NBME "Board" exams.

Although the University of Rochester now requires all students to take the USMLE (note: the policy was revised to allow the school to include the cost of the examinations in the student financial aid budgets), the institution does not use the examinations as academic "gates" (i.e., promotion/graduation requirements). Rochester feels the Board examinations should be used only for the purpose for which they were created: licensure.

Students taking the boards have found the three-part format helpful because it encourages the review of material in a timely fashion. Step I is an excellent way to consolidate and reinforce basic science knowledge before beginning clinical experiences. Rochester students have the option, when they take the USMLE, to release or not release the results to the school. The school will not release individual scores to anyone within or outside the institution, including residency programs. If a student needs a copy of his/her USMLE scores, the Registrar's Office will provide a copy of the score report. However, if the scores need to be shared with another party, the student will be responsible for transmitting the scores.

For general information regarding the USMLE, check the NBME website, http://www.nbme.org

©Copyright University of Rochester Medical Center, 1999-2006. Disclaimer. For questions or suggestions concerning the content of these pages, contact the URMC Webmaster.

Case 1:07-cv-11691-WGY    Document 1-9    Filed 09/11/07    Page 31 of 31

http://www.urmc.rochester.edu/smd/stdnt/handbook/USMLE.html