UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SOPHIE C. CURRIER, on behalf of herself and
on behalf of LEA M. GALLIEN-CURRIER

                    Plaintiffs,
        v.                                          Civil Action No.:  07-11691

NATIONAL BOARD OF MEDICAL
EXAMINERS,

                    Defendant.

**<u>NATIONAL BOARD OF MEDICAL EXAMINERS' OPPOSITION TO PLAINTIFFS'
MOTION FOR PRELIMINARY INJUNCTION</u>**

## INTRODUCTION[1]

Sophie Currier claims that she will be irreparably harmed if the National Board of Medical Examiners ("NBME" or "the NBME") does not abandon its uniform policy of maintaining time limits on its medical competency tests, arguing that she would face a high risk of failing the Step 2 CK examination again if she has to use a portion of her break time to express breast milk.  Plaintiff fails to demonstrate a high likelihood of success on this unique claim, and shows no irreparable harm to her or any harm to her that outweighs the harm to the public.  The court should deny the Motion for a Preliminary Injunction, which seeks to require NBME to permit her to be the first person (out of more than one million administrations of the examination) to be given double testing time and more than twice as much break time as others receive on each day of testing.

## BACKGROUND

The NBME and the United States Medical Licensing Examination

The NBME is a private non-profit corporation which, together with the Federation of State Medical Boards of the United States, Inc. ("FSMB"), another private non-profit corporation, has established the United States Medical Licensing Examination$^{TM}$ ("USMLE"). (Affidavit of Gerard F. Dillon, Ph.D. ("Dillon Aff.") ¶ 2, attached as Exhibit 1.)  These private organizations receive no federal or state funds, and have uniformly been found by courts not to be "state actors."  *See Brown v. Federation of State Medical Boards et al.*, No. 82-C-1789, 1985 WL 1659 (N.D. Ill. May 31, 1985).

The USMLE is an examination designed to assess a physician's ability to apply knowledge, concepts, and principles, and to demonstrate fundamental patient-centered skills, that

---

[1]    Plaintiff's motion for preliminary injunction was  removed by defendant to federal court on September 11, 2007.   Apparently recognizing that her federal claim is baseless, plaintiff filed a notice of dismissal of that claim.

are important in health and disease and that constitute the basis of safe and effective patient care. (*Id.*)  NBME is not a licensing authority, and has no power over the decision to grant a medical license.  (*Id.*)  Rather, each state's medical licensing authority sets its own standards for those seeking a license.  (*Id.*)  The results of the USMLE are made available to these authorities for their use in evaluating applicants seeking a medical license.  (*Id.*)  The state medical licensing authority may use the test results, along with information from other sources, to help determine if an individual is qualified to practice medicine safely, thus discharging the licensing authority's duty to protect the public.

There are three phases, or "Steps," of the USMLE.  (Dillon Aff. ¶ 4.)  These are highly standardized "timed" exams.  The Step 2 CK examination, at issue here, is a computer-based test that assesses whether an applicant can apply medical knowledge, skills, and understanding of clinical science essential for the provision of patient care under supervision and includes emphasis on health promotion and disease prevention.  (*Id.*)  Step 2 CK is a test of clinical knowledge, with a passing score set to screen out unqualified candidates.  For the year 2004-05, 94% of first time test takers from accredited U.S. medical schools passed.  Plaintiff failed Step 2 CK in April 2007. (Affidavit of Catherine Farmer, Psy.D. ("Farmer Aff.") ¶ 10, attached as Exhibit 2.)

The standard Step 2 CK examination consists of a 15-minute tutorial, followed by eight 60-minute blocks of multiple choice questions, with 45 minutes of break time that examinees can allocate as desired throughout the day.  (Dillon Aff. ¶ 8.)  Candidates who finish the tutorial or a block of questions early may use the remaining time as additional break time.[2]  (*Id.*)  Candidates may leave the examination room and testing center during their breaks.

---

[2]        Plaintiff skipped the tutorial on her prior administration of the exam, thus gaining 15 minutes of additional break time.  (Farmer Aff. ¶ 22.)

To ensure the integrity and meaning of the scores, the USMLE is administered under standard timed conditions, with no examinee receiving an advantage over another.  (Dillon Aff. ¶ 3.)  Where examinees request accommodations from the standard format, NBME has established a policy of providing alterations to the test format only to those with disabilities as defined by the Americans with Disabilities Act ("ADA").  (Dillon Aff. ¶ 10, Farmer Aff. ¶ 2.) Such accommodations include additional time to complete the examination, additional break time, large print or audio examinations, or assistance in recording answers.  (Dillon Aff. ¶ 9.) NBME consistently refuses to grant extra time for medical conditions (irritable bowel syndrome, urinary infections, etc.) that afflict men and women, unless the condition substantially limits the examinee in a major life activity.  (Dillon Aff. ¶ 10; Farmer Aff. ¶ 3.)  Examinees seeking accommodations under the ADA must submit documentation.  (Farmer Aff. ¶ 2.)  NBME consults with experts to determine whether the submission supports the diagnosis and accommodation.  (*Id*.)  The refusal to provide changes to the standard format in the absence of a documented disability is not based upon gender, does not infringe constitutional rights, and keeps the test fair.

Standard USMLE rules do not allow personal items, such as food or drink, into the examination room.  (Dillon Aff. ¶ 10; Farmer Aff. ¶ 3.)  Upon request, the NBME grants personal item exceptions to those who have a medical condition that is not a disability, allowing them to bring items such as footstools, pillows, insulin, and food into the test room.  These do not alter the test format.  (*Id*.)

NBME issues a Scheduling Permit specifying a three-month eligibility period during which the examinee may take the test.  (Dillon Aff. ¶ 7.)  The examinee may choose to extend this period for an additional three months by paying a nominal processing fee.  (*Id*.)  The

examinee schedules the test at his or her convenience and at his or her preferred location among approximately 300 U.S. and 100 international Prometric® Testing Centers.  Step 2 CK is delivered five or six days per week, 50 weeks each year.  (*Id*.)

<u>Plaintiff's Testing History</u>

Plaintiff took the Step 1 examination on July 2 and 3, 2001, and was sent notice of her passing score on July 26, 2001.  (Farmer Aff. ¶ 4.)  She first applied to take the Step 2 CK examination on June, 27, 2005.  (*Id*.)  For whatever reason, Plaintiff failed to submit a request for accommodation under the ADA until October 19, 2005.  (*Id*.)  Once received, NBME processed her request and via a letter dated November 1, 2005, granted her request for double testing time and separate testing room.  Plaintiff still did not take the examination.  (*Id*.)

Plaintiff re-registered to take the Step 2 CK examination on November 15, 2006, and requested the same ADA accommodations (double testing time and separate testing room), which NBME granted on December 1, 2006.  (Farmer Aff. ¶ 6.)

On January 17, 2007, plaintiff called the NBME to request additional break time for her upcoming Step 2 CK examination because she was pregnant.  (Farmer Aff. ¶ 7.)  As pregnancy is not a disability as defined by the ADA, extra breaks were not available to her on that basis. (*Id*.)  On January 25, 2007, plaintiff provided a written request for extra break time, food, water, and a pillow, as well as a letter from her physician supporting her request on the basis of pregnancy. (*Id*.)  Consistent with its stated policy, NBME informed plaintiff that additional break time was not available for conditions that are not disabilities as defined by the ADA, but granted plaintiff's request to bring food, drink, and a pillow into the testing room as personal item exceptions.  (*Id*.)

Plaintiff did not test during her three-month eligibility period of January through March 2007. She contacted NBME to extend her eligibility period through June 2007. (Farmer Aff. ¶ 8.)

Plaintiff ultimately took and failed the Step 2 CK examination on April 2 and 3, 2007. (Farmer Aff. ¶ 10.)

On June 12, 2007, plaintiff called the NBME and reported that she had failed Step 2 CK and would be breastfeeding at the time she planned to retake the examination. (Farmer Aff. ¶ 11.) She requested extra break time for the purpose of expressing breast milk during her Step 2 CK examination. (*Id*.) NBME returned plaintiff's call on June 13, 2007, and described its policy that extra break time is available only for disabilities covered by the ADA, and that lactation and expressing breast milk are not disabilities. (*Id*.)

On June 13, 2007, plaintiff called NBME stating that the standard break time was not sufficient. (Farmer Aff. ¶ 12.) She was directed to the USMLE Office of the Secretariat. (*Id*.)

On June 25, 2007, NBME received a standard request form from plaintiff requesting the same accommodations previously granted by NBME on the basis of her ADHD and dyslexia. (Farmer Aff. ¶ 14.) In a letter dated June 19, 2007, postmarked June 25 and received by the USMLE Office of the Secretariat on June 29, 2007, plaintiff requested accommodations of 20 minutes of extra break time to express milk, in addition to what she erroneously thought was only 40 minutes of standard break time, with the result that she was requesting 60 minutes of total break time each day of the examination. (Farmer Aff. ¶ 15.)

On July 3, 2007, the USMLE Office of the Secretariat informed plaintiff that her request was forwarded to the NBME Office of Disability Services. (Farmer Aff. ¶16.) On July 11, 2007, the NBME granted plaintiff's request for double testing time and a separate testing room

on the basis of her ADHD and dyslexia. (*Id.*) Her request for additional break time to express milk was denied consistent with NBME's policy of granting extra time or breaks, or other examination format changes only for ADA-covered disabilities. (*Id.*) However, NBME offered plaintiff a personal item exception to bring and use her breast pump in the testing room. (*Id*)

On August 10, 2007, plaintiff requested an additional 60 minutes of break time in order to express breast milk, four times the amount of additional break time she stated was needed in June. (Farmer Aff. ¶ 17.)  In addition, she requested that a private room with a power outlet be made available to her at the test center. (*Id.*)

On August 16, 2007, NBME responded that it could not provide additional break time for conditions not covered by the ADA, but offered to provide her with the requested private room with power outlet in which to express breast milk during her allotted break time. (Farmer Aff. ¶ 18.) The private room was separate from the special testing room which plaintiff had been granted as an ADA accommodation and which also contained a power outlet. (*Id.*)

On August 24, 2007, plaintiff responded that additional break time was necessary, and for the first time stated that her situation was "particularly complicated by the fact that . . . she has received an accommodation for her disabilities . . . ." (Farmer Aff. ¶ 19.) Plaintiff asserted that as she was a "nursing mother with a disability," the NBME was "legally obligated to provide reasonable accommodations to persons in [her] position." (*Id.*)

On August 28, 2007, NBME responded that, to the extent that plaintiff's request for additional break time was based on a change in her ADA covered disability and the current accommodation of double testing time was no longer appropriate, any documentation she could provide to that effect would receive prompt and serious consideration. (Farmer Aff. ¶ 20.) NBME further responded that, to the extent that the request was solely based on plaintiff's desire

to express milk, the policy did not allow for alteration of the standard test or break time, as breastfeeding or expressing milk is not an ADA disability.  (*Id*.)  NBME offered additional personal item exceptions in order to assist plaintiff, including permission to bring food and drink into the separate testing room, and permission to bring multiple assembled breast pumps so as to eliminate the time required to assemble, disassemble, and clean the pump during her break time. (*Id*.)

On September 5, 2007, plaintiff rejected NBME's proposals, citing her condition as a "disabled nursing mother."  (Farmer Aff. ¶ 21.)  That same day, when NBME again requested documentation relating to a recognized ADA disability, plaintiff repudiated her disability claim, stating that the need for additional break time was unrelated to her disability and solely to express milk.

In sum, NBME has offered the following personal item exceptions to plaintiff:

> i) permission to express milk in a separate, private room with electrical outlet (apart from her testing room) at the test center during the allotted break time;
>
> ii) permission to bring and use breast pump(s) to express milk while in her separate testing room during the test and/or break time;
>
> iii) within the constraints of security, providing her the privacy to pump in her separate testing room during the test and/or break time;
>
> iv) permission to bring food and drink into the exam, which she may consume at any time;
>
> v) permission to bring multiple, assembled breast pumps into her separate testing room, eliminating the time required to assemble, disassemble, and clean the pump during break time;
>
> v) the option to leave the test center to breastfeed during the allotted break time.

(Farmer Aff.  ¶ 23.)

7

Rather than accept the arrangements offered by the NBME, plaintiff seeks an injunction altering the standard format of the test for her because she says without favorable treatment she runs the risk of failure, which would delay her professional development.

## ARGUMENT

The plaintiff requesting a preliminary injunction bears the high burden of demonstrating: (i) that she has a substantial likelihood of success on the merits of her claims; (ii) that she will suffer irreparable harm if the injunction is not granted; and (iii) that the alleged harm she will suffer outweighs the harm to the defendant if the injunction is granted; and (iv) that granting the injunction is in the public interest. *Rio Grande Comty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 75 (1st Cir. 2005). Plaintiff fails to demonstrate any of the prerequisites for injunctive relief.

## I.    **Plaintiff Has Not Demonstrated That Irreparable Harm Would Result From a Failure to Grant the Preliminary Injunction.**

Plaintiff has not alleged that "irreparable harm" will result from a denial of the injunction. Since NBME will permit plaintiff to express milk at any time during the test, either during break or otherwise, the potential physical harm to a nursing woman who fails to express milk is not present. Instead, the harm alleged by plaintiff is economic, and "[i]t is well settled that economic damages, standing alone, do not constitute irreparable injury" *Surplec, Inc. v. Maine Pub. Serv. Co.*, 495 F. Supp. 2d 147, 150 (D. Me. 2007); *Tri-Nel Management, Inc. v. Bd. of Health of Barnstable*, 433 Mass. 217, 227-28 (2001). At most, plaintiff says that if she fails the exam, her "career and contributions as a physician and researcher . . . will be delayed." Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction ("Pl. Mem.") at 26. This court has specifically held that a delay in a doctor's career is not irreparable harm. *Baer v. National Board of Medical Examiners*, 392 F. Supp. 2d 42, 48 (D. Mass. 2005). The plaintiff says she is harmed by the

> risk that she will fail Step 2 CK, thereby jeopardizing her residency
> position at MGH; her professional reputation, her ability to earn a
> living and to begin fulfilling her MSTP scholarship obligation and
> repaying her medical school loans; and potentially diminishing her
> clinical knowledge and skills.

Pl. Mem. at 24. To the extent these risks create a cause of action, the potential harms can be remedied with money damages after a hearing on the merits. *See Martin v. Helstad*, 699 F.2d 387, 391-92 (7th Cir. 1983) (delay in gaining admission to graduate school not irreparable harm); *Doe v. New York Univ.*, 666 F.2d 761, 773 (2d Cir. 1981) (same). In *Baer v. National Board of Medical Examiners*, 392 F. Supp. 2d 42 (D. Mass. 2005), a medical student claimed that if the NBME did not give her extra testing time, she would fail the USMLE and be dismissed from school, thus suffering irreparable career harm. *Id.* at 48. The court held that harm was not irreparable because Baer may pass without the accommodations she sought. *Id.* at 49. Moreover, the risk of being dismissed from medical school did not meet the standard for injunctive relief, because she could enroll at another school; a delayed career is not irreparable harm. *Id.* This was especially evident where the student had waited until shortly before the examination to seek injunctive relief, despite months of opportunity to do so. *Id.* Similarly, plaintiff here has had the opportunity to take the Step 2 CK for over two years.

As in *Baer*, if plaintiff passes the exam, no harm will have ensued. Should plaintiff fail, and that failure could be attributed to unlawful action by the NBME, the damage consists solely of the possibility of a temporary loss of professional opportunities, the classic economic damages to be determined after a trial on the merits. *See McDonough v. Trustees of the University of New Hampshire*, 704 F.2d 780, 784-85 (1st Cir. 1983).

Even if the harm plaintiff asserts were in theory irreparable, plaintiff here has not provided any admissible factual support for these supposed harms. A finding of irreparable harm

cannot be based on mere "conjecture, surmise, or a party's unsubstantiated fears" of future harm. *Charlesbank Equity Fund II v. Blinds to Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004).  For instance, plaintiff claims that failing the examination would "jeopardize[e] her residency position at MGH," but fails to provide any evidence from MGH in support.  Further, plaintiff fails to provide any admissible evidence that the receipt of her degree from Harvard Medical School will be threatened or delayed should she not pass the examination.  The burden of proof is on the plaintiff and there is no proof here.  The plaintiff can take the test now, with the conveniences and accommodations offered by NBME, or she can take the test in five weeks, when her baby is no longer exclusively nursing if she feels that increases her chances of passing.  Plaintiff offers nothing to prove that a five-week delay in a medical school career that began in 1997 constitutes irreparable harm.  Therefore, her motion should be denied.

## II.   Plaintiff Cannot Demonstrate a Likelihood of Success on the Merits.

Plaintiff makes five claims.  Three allege infringement of constitutional rights, and two allege "gender discrimination."  Plaintiff will not prevail on any, and cannot show a likelihood of doing so.

### A.   Plaintiff Cannot Meet Her Burden of Demonstrating a Likelihood of Success with Respect to the § 1983 Claim.

In order to state a claim for a violation of 42 U.S.C. § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Plaintiff cannot establish either element of her § 1983 claim.

#### 1.   NBME Is Not a State Actor.

Because § 1983 only applies to state action, plaintiff must demonstrate that NBME is a state actor.  "The traditional definition of acting under color of state law requires that the

defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted).  Plaintiff argues that, because the Massachusetts Board of Registration of Medicine has elected to consider an applicant's score on the USMLE as one of many criteria in making its licensing determination, the Board of Registration of Medicine has delegated its medical licensing function to NBME, rendering NBME a state actor.  This is wrong both factually and legally.

Contrary to plaintiff's insinuation, NBME has no power to license doctors; rather, along with the FSMB, it creates and administers the USMLE, and reports the scores to state licensing boards.  In Massachusetts, to be eligible for a medical license, an applicant must 1) be eighteen years of age or over; 2) be of good moral character; 3) have completed two years of premedical studies in a college or university; and 4) have attended courses of instruction for four years of not less than thirty-two school weeks in each year, or its equivalent.  Mass. Gen. Laws. ch. 112, § 2. It is only in addition to these criteria that the law requires the applicant to "be examined" by the Board.  *Id.*  While the Board of Registration of Medicine in most instances accepts passage of the USMLE as meeting the examination requirement, this is not a delegation to the NBME of the licensing function.  Plaintiff cites no legal support for the notion that the NBME is performing a function "traditionally exclusively reserved to the state."[3]  Indeed, the only court to address this issue found that the NBME was not a state actor.  *See Brown v. Federation of State Medical Boards et al.*, No. 82-C-1789, 1985 WL 1659 (N.D. Ill. May 31, 1985).  Rejecting the same argument made by plaintiff here, the court held that:

---

[3]        Recognizing that NBME does not actually exercise any licensing function, plaintiff rests its state action argument on its claim that the Board of Registration of Medicine "does, in fact . . . rely on the results of the USMLE."  Pl. Mem. at 15.  Of course, a state's reliance on the services of a private company is not sufficient to render that company a state actor.

> [FSMB] and [NBME] are not state agencies. They do not license physicians. The actual state actors here are the state licensing boards, which have complete control over whether or not to use the defendants' tests, and if so, how to use these tests. Thus, the defendants are supplying a service used by candidates and state boards. This supplying of a testing service does not make defendants state actors any more than the company which provides the state with office supplies acts under color of state law. The state boards are at most defendants' consumers; defendants do not participate in a state activity.

*Id.* at *5.[4]

The First Circuit has rejected an argument like plaintiff's. In *Johnson v. Educational Testing Service*, 754 F.2d 20 (1st Cir. 1985), plaintiff claimed that since state law schools required the LSAT for admission, that Educational Testing Service ("ETS"), the testing company, was a state actor.  *Id.* at 23-24.  The Court disagreed because "ETS merely reports test scores and lacks authority to decide who shall be admitted and who shall be rejected. What is more . . . the formulation, grading, and reporting of standardized tests is not an exclusive public function."  *Id.* at 24-25.  NBME is no different.

Since NBME is not a state actor, plaintiff cannot meet its burden of demonstrating a likelihood of success on a § 1983 claim.[5]

> 2.   NBME's Policy Does Not Burden Plaintiff's Asserted Right to Breastfeed.

In addition to demonstrating state action, to succeed on a § 1983 claim plaintiff must demonstrate that NBME infringed a fundamental right.  *See Fields v. Palmdale School Dist.*, 437 F.3d 1197, 1208 (9th Cir. 2005).

---

[4]    Indeed, finding NBME to be a state actor simply because the Board has elected to use the results of the USMLE as one of its criteria would be a wholesale expansion of state action doctrine.  Adopting plaintiff's argument would transform every private college offering premedical studies and every private medical school into a state actor.

[5]    Furthermore, plaintiff's two other claims brought directly under the Massachusetts Constitution, both with respect to the due process clause and the Equal Rights Amendment, also require "state action."  *See Phillips v. Youth Development Program*, 14 Mass. App. Ct. 626, 626-28 (1982) (state action required to state claim under due process clause of Massachusetts Constitution);  *U.S. Jaycees v. MCAD*, 391 Mass. 594, 609 n.9 ("To be sure, the constitutional prohibition of discrimination based on sex expressed in art. 1 of the Declaration of Rights is directed against State action.")

The "fundamental right" asserted by plaintiff here is the constitutional "right to privacy," which plaintiff argues includes a fundamental right to breastfeed.  Plaintiff's claim fails, however, because NBME's decision does not infringe on plaintiff's right to privacy or ability to breastfeed or express milk.  It is undisputed that plaintiff may express milk at anytime during the examination, during breaks or otherwise.  Thus, to the extent that there is a substantive due process right to breastfeed, plaintiff identified no action by NBME infringing that right.

Indeed, plaintiff simply claims that having to use her break time to express milk will lower her chances of passing compared to other examinees who need not use their break time to express milk.[6]  As such, plaintiff is claiming a constitutional right to additional break time during her medical licensing examination.  But plaintiff provides no support that there is any right, constitutional or otherwise, to take the USMLE under conditions that make it ideal to express milk.[7]

The Montana Supreme Court faced the question whether there was a fundamental constitutional right to extra time for a nursing mother who was taking the bar exam.  *See In Re*

---

[6]  Plaintiff also seems to claim that the standard 45 minutes of break time is insufficient to express milk twice during the examination day, even without taking into account the time to eat and attend to other bodily functions. This is inconsistent with the affidavit she submitted from Alison Stuebe, who states that it takes 10-12 minutes to express milk, plus 3-5 minutes for pump assembly, and 5-10 minutes for disassembling and cleaning the pump and storing or disposing of the milk, for a total range of 18-27 minutes.  (Stuebe Aff. ¶ 6.)  Indeed, Stuebe notes that, "using extra (clean) pump parts" reduces the session time by five to seven minutes, for a total of 11-22 minutes. (*Id.*) The NBME has granted permission for plaintiff to bring multiple, assembled pumps to the testing room, which presumably would save even more time.  Moreover, while the Stuebe affidavit states that it is not "recommended" for a woman to eat or drink while doing so, she acknowledges that it is perfectly possible to do so.  (*Id.* ¶ 9.)  Thus, plaintiff's own expert rebuts her claim that the 45 minute break is inadequate.  We further note that plaintiff has also been given a personal item exception to bring food and drink into the testing room, allowing her to eat and drink without using break time for this purpose.

[7]  To the extent that plaintiff is claiming that it burdens her right to breastfeed to be required to use her break time to engage in a constitutionally protected activity, when others need not use their break time to do so, the argument is based on a faulty factual premise.  The NBME did not set its policy of providing 45 minutes of break time per day of Step 2 CK testing exclusively for examinees to eat, drink and use the restroom.  Examinees are given 45 minutes for a full range of activities, including attending to bodily needs, studying, checking email, breastfeeding, making phone calls, shopping, praying, or going home, some of which may be constitutionally protected.  The fact that some examinees use their break time for activities that are not constitutionally protected does not place an undue burden on the rights of those who choose to engage in activities that may be constitutionally protected.

*the Request for Accommodation of Cassandra Coleman for the July 2005 Montana Bar Examination*, No. 05-304 (2005) (decision and pleadings attached to Plaintiffs Memorandum in Support of Motion for Preliminary Injunction at Exhibits 1-2).  The court denied Coleman's request for more break time.  (*Id.* Exh. 1).  While a decision of the Montana Supreme Court is of course not binding on this court, the logic of the case is directly relevant and fatal to plaintiff's claim.  Indeed, the Montana Court, while providing some conveniences to Ms. Coleman, ordered her to take the test under more stringent conditions than plaintiff faces here.  (*Id.*)

Because NBME is not infringing on plaintiff's ability to breastfeed, the two principal cases cited by plaintiff are inapposite.  Those are cases where state actors prohibited breastfeeding.  In *Dike v. School Bd. of Orange County*, 650 F.2d 783 (5th Cir. 1981), *overruled in part by Shahar v. Bowers*, 114 F.3d 1097, 1102-03 (11th Cir. 1997), the school board refused to permit a teacher to breastfeed her daughter during the school day, so she was completely prevented from breastfeeding her child.[8] *Id.* at 784.  In *Berrios-Berrios v. Thornburg*, 716 F. Supp. 987 (D. Ky. 1989), a prison prohibited a mother from nursing her child during visitation, again completely preventing her from breastfeeding.  *Id.* at 991.  As both cases involved (i) a state actor who was (ii) preventing nursing, the courts had to consider whether breastfeeding was a constitutional right.[9]  Because, there has been no actual interference with plaintiff's ability to breastfeed, that constitutional analysis is unnecessary here.

---

[8]     We also note that the *Dike* court did not hold that the school district violated plaintiff's rights or order them to change their policy.  Rather, it recognized a constitutional right to breastfeed and then remanded to the district court to perform the requisite constitutional analysis.  *Dike*, 650 F.2d at 787.

[9]     This difference demonstrates why plaintiff's analysis is flawed from the beginning.  Plaintiff begins by stating that breastfeeding is a constitutional right, and then applying strict scrutiny to NBME's policy, without ever showing that the policy actually infringes on the claimed right.  The attempt to procure exemptions from generally applicable rules that do not of themselves address constitutional activity by claiming that the rules in some way inconvenience the expression of a constitutional right is not an uncommon tactic, but is usually rejected by the courts.  *See Jimmy Swaggart Ministries v. Bd. of Equalization of Cal.*, 493 U.S. 378 (1990) (religious group not entitled an exemption from generally applicable tax on its religious publications that it claimed burdened its right to free exercise).

Even if plaintiff could demonstrate that NBME was a state actor with a policy infringing a fundamental right, the NBME's policy would still pass constitutional scrutiny because it is narrowly tailored to further a compelling state interest.  It is narrowly tailored in that any infringement is limited to the short 9-hour window in which qualified examinees sit for the USMLE.  Further, it serves the compelling state interest of protecting the public health by ensuring that all examinees take the examination on a level playing field, and that only those who demonstrate the requisite minimum competency pass the USMLE.

### B.     Plaintiff Cannot Meet Her Burden of Demonstrating a Likelihood of Success with Respect to the Claim Under the Massachusetts Due Process Clause.

While plaintiff does not articulate a claim under the Massachusetts Constitution's due process clause separate from her § 1983 claim, a Massachusetts constitutional claim also requires (i) state action; and (ii) infringement of a fundamental right.  *See Phillips v. Youth Development Program*, 14 Mass. App. Ct. 626, 626-28 (1982).   As such, this claim fails for the same reasons as plaintiff's federal claim.

### C.     Plaintiff Cannot Meet Her Burden of Demonstrating a Likelihood of Success with Respect to the Claim Under the Massachusetts Civil Rights Act.

Under the Massachusetts Civil Rights Act ("MCRA"), plaintiff must demonstrate that NBME (i) interfered (ii) with the exercise of state or federal right, (iii) by threats, intimidation, or coercion.   *See* Mass Gen. Laws. ch. 12, § 11H ; *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 644 (2003).

NBME has not "interfered" with plaintiff's right to breastfeed her child.  Rather, plaintiff claims that expressing milk during her break time will make it more difficult for her to pass the examination.  But having less challenging examination conditions is not a right protected under any state or federal law.

NBME did not threaten, intimidate, or coerce the plaintiff.  Plaintiff's claim of

"economic coercion" is baseless.[10]  "Coercion" is "the active domination of another's will."  *See*

*Willits v. Roman Catholic Archbishop of Boston*, 411 Mass. 202, 210 (1991) (citing *Delaney v.*

*Chief of Police of Wareham*, 27 Mass. App. Ct. 398, 409 (1989)).  Plaintiff does not attempt to

demonstrate that NBME's policy will actively dominate her will in a manner that will prevent

her from being able to breastfeed her daughter, and plaintiff  cites no case for this proposition.

At most, plaintiff faces a choice between taking the test now, with the conveniences provided by

NBME, or delaying her examination until it suits her convenience.  Offering a test that presents

the plaintiff with such a decision is not a "domination" of her will.  Plaintiff's claim under

MCRA has no chance of success on the merits.

### D. Plaintiff Cannot Meet Her Burden of Demonstrating a Likelihood of Success with Respect to the Claim Under the Massachusetts Equal Rights Amendment.

Under the Massachusetts Equal Rights Amendment ("MERA"),  plaintiff must show the

existence of (i) a governmental classification, (ii) on the basis of sex, after which the court then

applies strict scrutiny review to the challenged action.  *See Commonwealth v. King*, 374 Mass. 5,

21 (1977).[11]  The Amendment only applies to state action.  *U.S. Jaycees v. MCAD*, 391 Mass.

594, 609 n.9 ("To be sure, the constitutional prohibition of discrimination based on sex

expressed in art. 1 of the Declaration of Rights is directed against State action."); *see also supra*

section II.A.1.  The NBME is not a state actor.

---

[10]    While plaintiff is correct that the SJC has held that, in some instances, economic coercion may be actionable under the MCRA, *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003), it requires actual or threatened economic harm causing an individual to forgo the exercise of a secured right.  *Id.*  Because the NBME has not caused plaintiff, through threats of economic harm or otherwise, to forgo the exercise of any right, the cases cited by plaintiff are inapposite.

[11]    Plaintiff's memorandum, while referring to the Massachusetts Equal Rights Amendment, cites to a statute, Mass. Gen. Laws. ch. 93, § 102(a).  All of the cases cited, however, refer to the Amendment, which the analysis here addresses.

Moreover, the NBME has not created any classification on the basis of sex.  Its policy of providing 45 minutes of break time per day for all applicants is completely gender neutral.  A sex-based classification occurs when the government, by statute, rule, or regulation, has elected to treat individuals differently based solely on gender.  In *Brackett v. Civil Service Comm'n*, 447 Mass. 233 (2006), the Civil Service Commission passed over equally qualified male officers for promotions in favor of females; in *Attorney General v. Mass. Interscholastic Athletic Ass'n*, 378 Mass 342 (1979), the IAA permitted females to play on male high school sports teams, but did not permit males to play on female teams; and in *Lowell v. Kowalski*, 380 Mass. 663 (1980),  a statute automatically made a child born to unwed parents an heir to the mother's estate, but did not equally permit that child to be an heir to the father's estate.  In each case, the government action, on its, face made a distinction on the basis of gender.[12]  Here plaintiff challenges a gender-neutral rule—45 minutes of break time—that is applied equally to all applicants.

Plaintiff's attempt to turn NBME's gender-neutral rule into an impermissible gender classification is logically flawed since it requires her to request that the NBME create a classification that treats a woman differently from a man with a temporary physical condition that he must address within the standard break time.  Plaintiff argues that

> in refusing to provide plaintiff with sufficient time in which to express breast milk during Step 2 CK *and* to eat, drink, and use the restroom, the NBME is treating a class of persons – namely, nursing women – differently from their male counterparts because no male examinees can give birth, breastfeed an infant, or express milk using a breast pump.

Pl. Mem. at 20.  A gender-neutral classification that has different impact on different people is not prohibited.  It is the gender classification, which plaintiff ironically urges the court to order,

---

[12]     Plaintiff also cites to *Mass. Electric Co. v. MCAD*, 375 Mass. 160 (1978), which did not involve interpretation of MERA but of an unemployment statute, but it too is of no help because it also involved an explicit gender-based classification.  *Id.*  (holding that singling out pregnancy as the only medical condition not covered by an employee health plan amounted to gender-based discrimination).

that is prohibited.  This court should decline the invitation to enter an injunction that conflicts with the MERA.

Finally, while plaintiff is correct that no male applicant must face the decision of having to express milk during the testing day and attend to his personal needs, Pl. Mem. at. 20, it is wrong to assert that no male applicant must choose between taking the examination and exercising his constitutional rights.  For example, fathers may need additional time to attend to their children's care during the examination, but NBME does not provide additional break time for that activity, or, indeed, any other activity unless the examinee documents that he or she has a disability.

Because plaintiff cannot show that NBME's policy constitutes governmental action amounting to sex-based discrimination, the claim under MERA fails.

### E. Plaintiff Cannot Meet Her Burden of Demonstrating a Likelihood of Success with Respect to the Claim Under the Massachusetts Public Accommodations Act.

Under the MPAA, plaintiff must show that she was (i) denied access to or restricted in the use of (ii) a public accommodation (iii) on the basis of sex.  *Soltys v. Wellesley Country Club*, 15 Mass.L.Rptr. 650 at *6 (Mass.Super. 2002).  Even if the testing center is a public accommodation, since NBME is not preventing plaintiff from expressing milk at the testing center, there is no claim that NBME is denying her access to or restricting her use of the center, much less doing so on the basis of sex.  Of course, plaintiff cites no case under the MPAA supporting her claim that NBME's across-the-board application of its gender-neutral policy amounts to a violation of the MPAA.

As plaintiff can show no likelihood of success on her gender discrimination claim under the MPAA, this court should deny the motion for preliminary injunction.

### III.     The Balance of Harms and the Public Interest Favor Denying the Motion for Preliminary Injunction

Because plaintiff cannot demonstrate a likelihood of success on the merits, nor can she demonstrate any irreparable harm, the balance of harms is strongly in favor of NBME. Moreover, because the harm to NBME also results in a harm to the public interest, the public interest weighs in favor of denying the injunction.  Plaintiff fails to show that the predicted harm to her outweighs the harm to NBME's mission.  First, she submits no admissible evidence of any harm.  The asserted consequences of her possible failure of the examination are speculative. Second, she has the ability to mitigate any supposed harm by waiting five weeks to take the test at which point she will no longer be exclusively breastfeeding.

On the other hand, NBME's mission would be greatly harmed by an injunction that changes the uniform standards of the test.  NBME's mission is to protect the health of the public by creating and administering uniform state-of-the-art examinations for assessing the capabilities of health professionals.  Maintaining uniform testing conditions is essential to NBME's ability to ensure that its examinations adequately assess physician skills and knowledge.[13]  Non-uniform test administration deprives state licensing boards of information vital to assessing whether a candidate can safely be licensed.  As one district court held in denying a motion for preliminary injunction against NBME:

> The public's interest is advanced when the [NBME] does its job to
> ensure that only those who are qualified will be licensed to practice
> medicine in the United States. Malpractice and poor medical care
> is widespread thus suggesting that the present standards may be too

---

[13]     In an attempt to minimize the effect of the harm to NBME, plaintiff claims that "as a practical matter" granting her the requested accommodation differs little from granting an accommodation to a disabled examinee. Pl. Mem. at 16.  This ignores the entire purpose of the ADA and NBME's policy, which is to grant accommodations to disabled individuals so as to put them on the same footing as all non-disabled individuals.  Granting an accommodation to a non-disabled individual in order to make it easier to take and pass the examination would give that individual an advantage over other examinees, a result it is NBME's mission to prevent.

low. The public's interest would not be served by lowering the bar
further.

*Krolik v. National Board of Medical Examiners*, No. CV-05-0315-PHX-FJM, at *3 (D. Az. Jan.

19, 2006) (attached as Exhibit 3).

Finally, the injunction would impose an insurmountable burden on NBME.  The specific

relief plaintiff seeks does not exist.  This test is computerized.   At present, the standard test is

eight hours of testing and 45 minutes of break time.  Plaintiff's computerized test provides 16

hours of test time and 90 minutes of break time, due to her disability.  There does not exist a

validated, computerized standard test that would give her the 16 hours of testing and 210 minutes

of break time that she seeks.

The balance of harms clearly favors NBME and the public interest over the plaintiff.

## CONCLUSION

For the reasons stated above, NBME respectfully requests that this Court deny plaintiff's

motion for a preliminary injunction.

Respectfully submitted,

NATIONAL BOARD OF MEDICAL
EXAMINERS,

By its attorneys,

**/s/** Joseph S. Savage Jr.
Joseph F. Savage Jr. (BBO # 443030)
William J. Trach (BBO #661401)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated:  September 12, 2007

20

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 13, 2007.

/s/ Joseph S. Savage Jr.

LIBA/1827983.1