# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SOPHIE C. CURRIER, on behalf of herself and on behalf of LEA M. GALLIEN-CURRIER<br><br>　　　　　Plaintiffs,<br>v.<br><br>NATIONAL BOARD OF MEDICAL EXAMINERS,<br><br>　　　　　Defendant. | Civil Action No.: 07-11691 |

### AFFIDAVIT OF CATHERINE FARMER, PSY.D.

Catherine Farmer, having been duly sworn, hereby deposes and states:

1.　　I am employed by the National Board of Medical Examiners ("NBME") as Manager, Disability Services and ADA Compliance Officer, Testing Programs. As Manager, my duties include, among other things, operational responsibility for the office that receives and processes requests for test accommodations for the United States Medical Licensing Examination™ ("USMLE"). I am responsible for making decisions and recommendations to approve such requests as well as the appropriate accommodation(s) to be provided. A copy of my curriculum vitae is attached hereto as Exhibit A.

2.　　The NBME's Office of Disability Services is responsible for implementing the policy of providing test accommodations solely to individuals with recognized disabilities under the Americans with Disabilities Act ("ADA"). In doing so, the Office of Disability Services ("DS") reviews, among other things, requests for test accommodations for the USMLE. Upon receipt and review of an examinee's request for test accommodations and the submitted supporting documentation, NBME consults with outside experts with expertise in the

assessment, diagnosis, and treatment of the claimed disability to assist in determining whether the applicant's submission documents that she or he has a substantial limitation in a major life activity and, if so, what accommodation is appropriate.

3. NBME has consistently denied any request for test accommodations that include modifications in the standard conditions of test administration, such as additional testing time, breaks, audio format, and amanuensis, to anyone with a condition or impairment that does not rise to the level of a disability as defined by the ADA. NBME does, however, at its discretion grant permission for personal item exceptions relating to the physical testing environment, and that do not involve altering the format of the examination, to individuals who demonstrate a medical necessity but whose conditions do not rise to the level of an ADA disability. These include, for example, allowing examinees to bring items into the testing room that would otherwise be prohibited, such as footstools, pillows, insulin syringes, food, water, etc.

4. According to NBME records and documents submitted by and on behalf of Ms. Currier, Ms. Currier took the Step 1 examination on July 2 and July 3, 2001, and was sent notice of her passing score on July 26, 2001. She first applied to take the Step 2 CK examination on June, 27, 2005. On October 19, 2005, Ms. Currier made a request for test accommodations for Step 2 CK on the basis of her Attention Deficit Hyperactivity Disorder ("ADHD") and dyslexia. Ms. Currier requested double the amount of testing time to complete the examination, as well as a separate testing room. With these testing accommodations, Ms. Currier's examination would take place over the course of two nine-hour days. The NBME processed her request and via a letter dated November 1, 2005, granted her request for double testing time and a separate testing room and, at her request for an extension of her eligibility period, issued to Ms. Currier a testing

permit to sit for the Step 2 CK examination during the three-month eligibility period of December 2005 through February 2006.

5. Ms. Currier did not sit for the examination during the three-month eligibility period from December 2005 through February 2006 following her initial registration.

6. Ms. Currier re-registered for Step 2 CK on November 15, 2006 for a testing period of January through March 2007. By way of a standard request form, received by NBME on November 16, 2006, Ms. Currier requested the same accommodations that were previously granted by NBME on the basis of her ADHD and dyslexia (double testing time and a separate testing room). In a letter dated December 1, 2006, NBME granted Ms. Currier's request for double testing time and a separate testing room.

7. On January 17, 2007, Ms. Currier called the NBME to request additional break time for her upcoming Step 2 CK exam because she was pregnant. NBME informed Ms. Currier by telephone that pregnancy was not a disability as defined by the ADA and that extra breaks were not available to her on that basis. On January 25, 2007, Ms. Currier provided a written request for extra break time, food, water, and a pillow, as well as a letter from her physician supporting her request on the basis of pregnancy. Consistent with its stated policy, NBME informed Ms. Currier that additional break time was not available for conditions that are not disabilities under the ADA. However, NBME granted Ms. Currier's request to bring food, drink, and a pillow into the testing room as personal item exceptions.

8. Ms. Currier did not test during her three month eligibility period of January through March 2007. She contacted NBME to extend her eligibility period through June 2007.

9. On March 26, 2007, Ms Currier contacted NBME by e-mail informing it that she had rescheduled her examination due to illness. She requested that NBME coordinate the prior

granted personal item exception of food, water, and a pillow for her new test date. NBME responded by e-mail on March 27, 2007 that it would do so.

10. Ms. Currier ultimately took and failed the Step 2 CK examination on April 2 and 3, 2007.

11. On June 12, 2007, Ms. Currier called NBME and reported that she had failed Step 2 CK and would be breastfeeding at the time she planned to retake the examination. She requested extra break time for the purpose of expressing breast milk during her Step 2 CK examination. NBME returned Ms. Currier's call on June 13, 2007 and described its policy that extra break time is available only for disabilities covered by the ADA, and that lactation and expressing breast milk are not disabilities.

12. On June 13, 2007, Ms. Currier called NBME stating that the standard break time was not sufficient and asked who was in charge of the examination. NBME restated its policy regarding accommodations for disabilities and advised her that concerns regarding examination policies should be directed to the Office of the Secretariat.

13. On June 19, 2007, Ms. Currier registered to take the Step 2 CK examination again.

14. On June 25, 2007, NBME received a standard request form from Ms. Currier requesting the same accommodations previously granted by NBME on the basis of her ADHD and dyslexia. NBME acknowledged her request by letter dated June 25, 2007.

15. In a letter dated June 19, 2007, postmarked June 25 and received by the USMLE Office of the Secretariat on June 29, 2007, Ms. Currier requested accommodations of 20 minutes of extra break time to express milk, in addition to what she erroneously stated was only 40

minutes of standard break time, with the result that she was requesting 60 minutes of total break time each day of the examination.

16. By letter dated July 3, 2007, the USMLE Office of the Secretariat informed Ms. Currier that her request was forwarded to the NBME Office of Disability Services. On July 11, 2007, NBME granted Ms. Currier's request for double testing time and a separate testing room on the basis of her ADHD and dyslexia. Her request for additional break time to express milk was denied consistent with NBME's policy of granting extra time, breaks, or other examination format changes only for ADA covered disabilities. However, NBME offered Ms. Currier a personal item exception to bring and use her breast pump in the testing room.

17. On August 10, 2007, through counsel Ms. Currier requested an additional 60 minutes of break time in order to express breast milk, four times the amount of additional break time she stated was needed in her June 11, 2007 letter to the USMLE Secretariat. In addition, she requested that a private room with a power outlet be made available to her at the test center.

18. On August 16, 2007, NBME through counsel responded that it could not provide additional break time for conditions not covered by the ADA, but offered to provide her with the requested private room with power outlet in which to express breast milk during her allotted break time. The private room was separate from the special testing room that Ms. Currier had been granted as an ADA accommodation and which also contained a power outlet.

19. On August 24, 2007, Ms. Currier's counsel responded that additional break time was necessary, and for the first time stated that her situation was "particularly complicated by the fact that … she has received an accommodation for her disabilities ..." Ms. Currier's counsel asserted that as Ms. Currier was a "nursing mother with a disability," the NBME was "legally obligated to provide reasonable accommodations to persons in [her] position."

20.     On August 28, 2007, NBME responded that, to the extent that Ms. Currier's request for additional break time was based on a change in her ADA covered disability and the current accommodation of double testing time was no longer appropriate, any documentation she could provide to that effect would receive prompt and serious consideration.  NBME further responded that, to the extent that the request was solely based on Ms. Currier's desire to express milk, NBME's policy did not allow for alteration of the standard test or break time, as breastfeeding or expressing milk is not an ADA disability.  NBME offered additional personal item exceptions in order to assist Ms. Currier, including permission to bring food and drink into the separate testing room, and permission to bring multiple assembled breast pumps so as to eliminate the time required to assemble, disassemble, and clean the pump during her break time.

21.     On September 5, 2007, through counsel Ms. Currier responded that "the accommodations she currently receives for her Attention Deficit and Hyperactivity Disorder and Dyslexia are sufficient to address those disabilities … and she neither wishes nor intends to alter her accommodations for those disabilities at this time."  Ms. Currier asserted that as a disabled nursing mother, she is "unable to make adjustments in her schedule as [the NBME] has presumed other, non-disabled, nursing mothers can, e.g., by completing blocks of the examination early to 'earn' extra break time."  While every examinee has the opportunity to earn extra break time if/when they complete test blocks in less than the allotted time, NBME has never suggested, advised, or presumed that Ms. Currier should do so.  The sample exam schedule provided to Ms. Currier by my letter of July 11, 2007 demonstrated how an examinee could use the standard break time and gain an additional 15 minutes by skipping the tutorial in order to take a 20-30 minute break every three hours, the amount of time and frequency of breaks that Ms. Currier claimed she needed, even without finishing test blocks early.

22. Ms. Currier skipped the tutorial and gained the additional 15 minutes break time the first time she took the Step 2 CK examination in April 2007.

23. To date, NBME has offered the following to Ms. Currier in order to assist her in her desire to express breast milk during the examination day(s), all of which have been rejected as insufficient:

i) permission to express milk in a separate, private room with electrical outlet (apart from her testing room) at the test center during the allotted break time;

ii) permission to bring and use breast pump(s) to express milk while in her separate testing room during the test and/or break time;

iii) within the constraints of security, providing her the privacy to pump in her separate testing room during the test and/or break time;

iv) permission to bring food and drink into her separate testing room, which she may consume at any time;

v) permission to bring multiple, assembled breast pumps into her separate testing room, eliminating the time required to assemble, disassemble, and clean the pump during break time;

vi) the option to leave the test center to breastfeed during the allotted break time.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 12TH DAY OF SEPTEMBER, 2007.

*Catherine Farmer, PSY.D.*
Catherine Farmer, PSY.D.

# EXHIBIT A

*Catherine Farmer, PsyD*
National Board of Medical Examiners
3750 Market Street
Philadelphia, PA 19104
TEL: 215-590-9700
cfarmer@nbme.org
_____

**EDUCATION**

| | | | |
|---|---|---|---|
| PsyD | Immaculata University  (APA approved) Immaculata, Pennsylvania | Clinical Psychology | 2004 |
| MS | Saint Joseph's University Philadelphia, Pennsylvania | Health Education | 1993 |
| BS | Neumann College Aston, Pennsylvania | Biology | 1985 |

**PROFESSIONAL EXPERIENCE**

*INDEPENDENT CONSULTANT*

*9/05 – 8/06*   Reviewed requests for test accommodations and supporting documentation of disability due to mental disorder.  Made recommendations to testing agency regarding appropriateness of test accommodation based on individual's functional limitation(s) and according to the Americans with Disabilities Act.

*ADMINISTRATIVE/MANAGEMENT*

National Board of Medical Examiners (NBME), Philadelphia, PA

9/07 - present   *Manager, Disability Services*
*ADA Compliance Officer, Testing Programs*
Oversee the Office of Disability Services.  Develop policies, procedures, and best practices to ensure the timely processing of requests for test accommodations.  Review examinee requests for accommodation and supporting materials to determine if they document disability as defined by the ADA and determine what, if any accommodation is appropriate.  Make decisions and recommendations for approval of accommodations for USMLE.  Communicate with examinees regarding the outcome of their request for accommodations.

8/04 **-** 8/05   *Case Manager, Disability Services*
Reviewed requests for test accommodations for the United States Medical Licensing Examination (USMLE) and supporting documentation of disability.  Communicated NBME/USMLE policy and documentation guidelines to examinees, evaluators, and medical school personnel.  Prepared custom written correspondence to examinees communicating the status and outcome of their requests for accommodation.

5/01 **-** 8/04   *Special Assistant (part-time)*
Assisted with special projects and programs as needed to support the goals and objectives of the Division of Examinee Support Services.  Assisted Disability Services staff with review of examinee requests for test accommodations and documentation of disability.  Prepared custom written correspondence to examinees communicating the status and outcome of their requests for accommodation.

Catherine Farmer, PsyD
Page 2 of 3

1/95 - 5/01    *Assistant Manager, Test Administration*
Managed daily operation of the test administration unit including supervision of four exempt staff members.  Prepared and monitored annual budget.  Communicated policies and procedures regarding delivery of the NBME Certification Examination and the USMLE to examinees, medical school officials, hospital staff, medical licensing authorities and the public.  Supervised the investigation and resolution of problems and irregularities regarding computer based test delivery of USMLE.  Communicated the outcome/resolution of investigations to examinees.

1/93 - 12/94    *Test Center Coordinator*
Assessed compliance with NBME/USMLE test administration procedures at over 200 national test centers.  Conducted test center site visits; evaluated test center facilities and staff.  Planned, developed and conducted on-site proctor training.  Established new test centers, negotiated and monitored vendor service agreements.

*PROJECT MANAGEMENT*

8/88 - 1/93    *Project Coordinator*
Coordinated a collaborative research project between the NBME and the National Council of State Boards of Nursing, Inc. (NCSBN) to develop computer simulations for testing competence in nursing practice.

8/86 - 1/93    *Computer Based eXamination (CBX) Analyst*
Assisted with development of NBME computer-based simulations for testing competence in medical practice.

*TEACHING*

9/05 - 8/06    *Postdoctoral Fellowship: Primary Care Family Psychology*
University of Rochester, School of Medicine and Dentistry, Rochester, New York
Department of Medicine, Highland Hospital

*CLINICAL PSYCHOLOGY TRAINING*

9/05 - 8/06    *Postdoctoral Fellowship: Primary Care Family Psychology*
University of Rochester, School of Medicine and Dentistry, Rochester, New York
Department of Psychiatry, Strong Memorial Hospital

7/03 - 8/04    *Predoctoral Internship*
The Renfrew Center, Philadelphia, Pennsylvania

9/01- 6/03    *Clinical Practica*
Main Line Health, Bryn Mawr Rehab Hospital, Malvern, Pennsylvania
    Psychology Department; Pain Management Program

5/01 - 8/01    Children's Crisis Treatment Center, Philadelphia, Pennsylvania

Catherine Farmer, PsyD
Page 3 of 3

*CLINICAL NURSING EXPERIENCE*

| | |
|---|---|
| 1991 - 95 | Bayada Nurses, Media, Pennsylvania |
| 2001 - 02 | ***Licensed Practical Nurse (LPN) (temporary part-time):*** Home Care Nursing |
| 6/88 - 10/91 | Western Medical Services, Media, Pennsylvania<br>***LPN (temporary part-time):*** Home Care Nursing |
| 1977 - 86 | Mercy Catholic Medical Center, Darby, Pennsylvania (Mercy Fitzgerald Hospital)<br>***LPN:*** Cardiac Step-Down/Telemetry Unit, Surgical Intensive Care/Coronary Care Unit, Operating Room, Medical Intensive Care Unit, General Medical Unit |
| 1975 - 77 | St. Francis Country House (Skilled Nursing Facility), Darby, Pennsylvania<br>***LPN:*** Charge nurse |

**PROFESSIONAL MEMBERSHIPS**

American Psychological Association (APA)

**PROFESSIONAL LICENSURE**

Pennsylvania Licensed Practical Nurse: PN-061518-L
New York Licensed Practical Nurse: 280758